UNITED STATES DEPARTMENT OF COMMERCE
**International Trade Administration**
Washington, D.C. 20230

A-549-502
Remand
Slip Op. 21-135
Scope – Dual-Stenciled Pipe
**Public Document**
E&C/O VII: Team

***Saha Thai Steel Pipe Public Company, Ltd., v. United States***
**Court No. 1:20-cv-133, Slip Op. 21-135 (CIT October 6, 2021)**

**FINAL RESULTS OF REDETERMINATION
PURSUANT TO COURT REMAND**

## I.    SUMMARY

The Department of Commerce (Commerce) has prepared these final results of

redetermination pursuant to the remand order of the U.S. Court of International Trade (Court or

CIT) in *Saha Thai Steel Pipe Public Company, Ltd., v. United States*, Court No. 1-20-cv-133,

Slip Op. 21-135 (October 6, 2021) *(Remand Order)*.  This remand concerns the final scope ruling

issued by Commerce after conducting a scope inquiry under the 1986 antidumping duty order on

circular welded carbon steel pipes and tubes (CWP) from Thailand.[1]  In its *Remand Order*, the

Court directed Commerce to file its remand redetermination with the Court within 90 days from

the date of issuance of the *Remand Order*.  The Court remanded Commerce to conduct an

analysis that reconsiders the sources listed in 19 CFR 351.225(k)(1) in light of its holding to

determine whether dual-stenciled pipe, which is certified for use in standard pipe or line pipe

applications, falls within the scope of the *Thailand Order*.[2]

In accordance with the *Remand Order*, Commerce has reconsidered record sources under

19 CFR 351.225(k) in light of the reasoning, analysis and conclusions of the Court, and under

---

[1] *See* Memorandum, "Antidumping Duty Order on Circular Welded Carbon Steel Pipes and Tubes from Thailand: Final Scope Ruling on Line Pipe and Dual-Stenciled Standard and Line Pipe," dated June 30, 2020 (Final Scope Ruling).

[2] *See Antidumping Duty Order; Circular Welded Carbon Steel Pipes and Tubes from Thailand*, 51 FR 8341 (March 11, 1986) (*Thailand Order*).

respectful protest,[3] for the reasons explained below, we find on remand that dual-stenciled standard pipe and line pipe are not covered by the scope of *Thailand Order*.

## II.    SCOPE OF THE *THAILAND ORDER*

The products covered by the *Thailand Order* are certain circular welded carbon steel pipes and tubes from Thailand.  The subject merchandise has an outside diameter of 0.375 inches or more, but not exceeding 16 inches, of any wall thickness.  These products, which are commonly referred to in the industry as "standard pipe" or "structural tubing" are hereinafter designated as "pipes and tubes."  The merchandise is classifiable under the Harmonized Tariff Schedule of the United States (HTSUS) subheadings 7306.30.1000, 7306.30.5025, 7306.30.5032, 7306.30.5040, 7306.30.5055, 7306.30.5085 and 7306.30.5090.  Although the HTSUS subheadings are provided for convenience and purposes of U.S. Customs and Border Protection (CBP), the written description of the merchandise subject to the *Thailand Order* is dispositive.

## III.    BACKGROUND

On November 22, 2019, Commerce self-initiated a scope inquiry to determine whether dual-stenciled standard pipe and line pipe (dual-stenciled pipe) and single-stenciled line pipe are subject to the *Thailand Order*.[4]

*Preliminary Scope Ruling*

On February 24, 2020, Commerce issued a Preliminary Scope Ruling.[5]  Both a domestic producer of the domestic like product, Wheatland Tube Company (Wheatland), and an exporter

---

[3] *See Viraj Group, Ltd. v. United States*, 343 F.3d 1371, 1376-77 (Fed. Cir. 2003).
[4] *See* Memorandum, "Antidumping Duty Order on Circular Welded Carbon Steel Pipes and Tubes from Thailand: Self Initiation of Scope Inquiry on Line Pipe and Dual-Stenciled Standard Line Pipe," dated November 22, 2019.
[5] *See* Memorandum, "Antidumping Duty Order on Circular Welded Carbon Steel Pipes and Tubes from Thailand: Preliminary Scope Ruling on Line Pipe and Dual-Stenciled Standard Line Pipe," dated February 24, 2020 (Preliminary Scope Ruling).

of the subject merchandise, Saha Thai Steel Pipe (Public) Company, Ltd. (Saha Thai),
participated in Commerce's scope inquiry.

- Commerce and both parties placed information on the record, and Wheatland and Saha
  Thai provided comments and rebuttal comments.[6]  Commerce considered all of the
  information on the administrative record, as well as the parties' comments, in issuing its
  Preliminary Scope Ruling.

- Commerce preliminarily determined that single-stenciled line pipe was not covered by
  the scope of the *Thailand Order*, but that pipe that is dual-stenciled standard pipe and line
  pipe to "indicate compliance with two different industry specifications, as conforming to
  industry standards for both standard pipe and line pipe, such as ASTM A53 and API 5L"
  was covered by the scope of the *Thailand Order*.[7]

- Commerce explained that the *Thailand Order* covers only "standard pipe," and cited to
  descriptions in the Petition and in the *ITC Final Injury Determination*, for descriptions of
  what products are covered by the term "standard pipe."[8]

- Commerce explained that line pipe was not covered by the *Thailand Order* and that
  "during the underlying investigation, the petitioners withdrew line pipe from the scope of
  the Petition with respect to Thailand" and the U.S. International Trade Commission (ITC)
  "explicitly" stated that the "underlying investigation of steel pipe from Thailand did not

---

[6] *See* Memorandum, "Placing Document of the Record of the Line Pipe Scope Inquiry," dated December 6, 2019;
Wheatland's Letter, "Circular Welded Carbon Steel Pipes and Tubes from Thailand:  Response to November 22,
2019 Request for Comments," dated December 12, 2019; Saha Thai's Letter, "Saha Thai's Comments on 'Line
Pipe' Scope Inquiry Circular Welded Carbon Steel Pipe and Tubes from Thailand," dated December 20, 2019; and
Saha Thai's Letter, "Saha Thai's Rebuttal Comments on 'Line Pipe' Scope Inquiry Circular Welded Carbon Steel
Pipe and Tubes from Thailand," dated December 30, 2019.
[7] *See* Preliminary Scope Ruling at 3.
[8] *Id.* (citing Petitioner's Letter, "Petition for Imposition of Antidumping Duties:  Members of Committee on Pipe
and Tube Imports," dated February 28, 1984 (Petition); and *Certain Welded Carbon Steel Pipes and Tubes from
Turkey and Thailand (Final)*, Inv. Nos. 701-TA-253 and 731-TA-252, USITC Pub. 1810 (February 1986) (*ITC
Final Injury Determination*).

include line pipe."[9]  However, Commerce also found that unlike other "orders covering similar merchandise (*e.g.*, from Brazil, Mexico, Korea, and Venezuela)," the *Thailand Order* did "not explicitly exclude pipe that has been dual-stenciled as standard pipe and line pipe."[10]

- Based on the information on the administrative record before it, Commerce concluded that there was "no information from the investigation indicating that pipe which has been dual-stenciled as both standard pipe and line pipe was intended to be excluded from the {*Thailand Order*}."[11]  Therefore, under the scope language itself, Commerce preliminarily found that the *Thailand Order* covered dual-stenciled standard pipe and line pipe, *i.e.*, certified as standard pipe as well as certified as line pipe.[12]

- Relying on the sources listed in 19 CFR 351.225(k)(1), Commerce continued its analysis by looking to the *ITC Fourth Sunset Final Report* which covered seven different orders on similar standard pipe products and noted that the "individual orders were established based on different petitions with different scope language.  Although some of the CWP orders explicitly include exclusions for line pipe and dual-stenciled line pipe, some of the CWP orders do not include such exclusions."[13]

- Commerce explained, therefore, that the ITC's statements about line pipe and dual-stenciled standard pipe and line pipe in general which indicated that CWP orders did not

---

[9] *Id.* at 5 (citing *ITC Final Injury Determination*)

[10] *Id.* at 6-7 (citing *Notice of Antidumping Duty Orders:  Certain Circular Welded Non-Alloy Steel Pipe from Brazil, the Republic of Korea (Korea), Mexico, and Venezuela and Amendment to Final Determination of Sales at Less Than Fair Value:  Certain Welded Non-Alloy Steel Pipe from Korea*, 57 FR 49453 (November 2, 1992)).

[11] *Id.* at 7.

[12] *Id.*

[13] *Id.* (citing Saha Thai Letter, "Saha Thai's Comments on 'Line Pipe' Scope Inquiry Circular Welded Carbon Steel Pipe and Tubes from Thailand," dated August 26, 2019 at Attachment 9:  *Certain Circular Welded Pipe and Tube from Brazil, India, Korea, Mexico, Taiwan, Thailand, and Turkey (Final)*, Inv. Nos. 701-TA-253 and 731-TA-132, 252, 271, 273, 532-534, and 536 (Fourth Review), USITC Pub. 4754 (January 2018) (*ITC Fourth Sunset Final Report*)).

cover dual-stenciled pipe "did not apply to all of the CWP orders, as some CWP orders contained express dual-stenciled exclusions and some did not."[14]

- Commerce explained that the CIT's opinion in *Wheatland Tube Co.*,[15] which applied to the CWP from Mexico proceeding, was "inapposite," because that holding was "separate from the order on CWP from Thailand, which has different scope language and its own record that differs from the records covered by the proceedings referenced by Saha Thai. Specifically, the scope of the Mexican CWP order includes the explicit exclusions for line pipe and dual- or triple-stenciled products, which was the crux of the *Wheatland Tube Co.* litigation," while no such language existed in the scope of the *Thailand Order*.[16]

*Final Scope Ruling*

In the Final Scope Ruling issued on June 30, 2020, Commerce once again considered the evidence on the record as well as the additional arguments of the parties made after the preliminary scope ruling in case briefs and rebuttal briefs filed by Wheatland and Saha Thai.[17]

- Commerce again determined that single-stenciled line pipe was not covered by the scope of the *Thailand Order*, but that pipe that is dual-stenciled to "indicate compliance with two different industry specifications, as conforming to industry standards for both

---

[14] *Id.*

[15] *See Wheatland Tube Co. v. United States*, 973 F. Supp. 149, 158 (CIT 1997), *aff'd*, 161 F.3d 1365 (Fed. Cir. 1998) (*Wheatland Tube Co.*).

[16] *Id.*

[17] *See* Wheatland's Letter, "Circular Welded Carbon Steel Pipes and Tubes from Thailand:  Case Brief," dated March 23, 2020; *see also* Saha Thai's Letter, "Saha Thai's Scope Inquiry Case Brief Circular Welded Carbon Steel Pipe and Tubes from Thailand," dated March 30, 2020 (Saha Thai's Scope Inquiry Case Brief); Wheatland's Letter, "Circular Welded Carbon Steel Pipes and Tubes from Thailand:  Rebuttal Brief," dated April 9, 2020; and Saha Thai's Letter, "Saha Thai's Scope Inquiry Rebuttal Brief Circular Welded Carbon Steel Pipe and Tubes from Thailand," dated April 9, 2020.

standard pipe and line pipe, such as ASTM A53 and API 5L" was covered by the scope of the *Thailand Order*.[18]

- Commerce made this determination based on consideration of the language of the scope of the *Thailand Order*, consideration of the sources under 19 CFR 351.225(k)(1) placed on the record, and the substantial evidence on the administrative record before it. Commerce did not look beyond the record in making its determination.[19]

- Commerce first determined in the Final Scope Ruling that dual-stenciled pipe met the description of subject merchandise included in the scope of the *Thailand Order*, both to the physical description as well as the classification as standard pipe.[20]  Standard pipe by definition is pipe that is most commonly produced to American Society for Testing and Materials (ASTM) specifications A-120, A-53, and A-135.[21]

- Next, Commerce considered all 19 CFR 351.225(k)(1) evidence placed on the record by parties, as well as other informative evidence from separate proceedings covering standard pipe.[22]

- Commerce found that neither Commerce's *Final Determination,*[23] nor the *ITC Final Injury Determination*, addressed dual-stenciled pipe, and, therefore, did not signify an intentional omission as contemplated in *Wheatland Tube Co.*[24]

---

[18] *See* Final Scope Ruling at 3.
[19] *Id.* at 12-17.
[20] *Id.* at 12-14:  "if a certain product is certified as standard pipe, then it is standard pipe regardless of whether it is also certified as line pipe."
[21] *Id.* at 3; *see also Remand Order* at 30 (citing *Certain Welded Carbon Steel Pipes and Tubes from Thailand and Venezuela*, Inv. Nos. 701-TA-242 and 731-TA-252 and 253 (Preliminary), USITC Pub. 1680 (April 1985) (ITC Preliminary Injury Determination) at 7-8).
[22] *See* Final Scope Ruling at 12-17.
[23] *See Antidumping:  Circular Welded Carbon Steel Pipes and Tubes from Thailand; Final Determination of Sales at Less Than Fair Value*, 51 FR 3384 (January 27, 1986).
[24] *See* Final Scope Ruling at 14.

- With respect to the arguments that some CWP orders had language excluding dual-stenciled pipe and some did not, Commerce found that "such differences merely suggest that some products may have been intended differently under the different orders."[25] Commerce also reviewed the *ITC Third Sunset Final Report*[26] and *ITC Fourth Sunset Final Report*, which had been placed on the record by Saha Thai.  Saha Thai pointed out that in both of the ITC's sunset reviews, the ITC stated that "dual-stenciled pipe, which enters as line pipe under a different subheading of the {HTSUS} for U.S. customs purposes, is not within the scope of the orders."[27]  Commerce, however, found that it was "clear that the ITC was not addressing the language of each individual order, including the scope text which differed between those orders, but instead was providing a generalized statement applicable to the majority of the orders, which contained explicit exclusions for dual-stenciled pipe."[28]  As it concluded in analyzing the similar language from the *ITC Fourth Sunset Final Report*, Commerce determined that this reference, as well to "orders" in the plural, was not intended to cover all of the CWP orders.[29] Commerce determined, instead, that the only reasonable conclusion was that the various references to the ITC language were meant to summarize the status of dual-stenciled pipe

---

[25] *Id.* at 15.
[26] *See Circular Welded Pipe and Tube from Brazil, India, Korea, Mexico, Taiwan, Thailand, and Turkey*, Investigation Nos. 701-TA-253 and 731-TA-132, 252, 271, 273, 532-534 and 536 (Third Review), USITC Publication 4333 (June 2012) (*ITC Third Sunset Final Report*).  Saha Thai raised arguments concerning language in the Third Sunset Final Report for Commerce to consider in its scope inquiry case brief.  *See* Saha Thai's Scope Inquiry Case Brief at 12-13.
[27] *Id.* (citing *ITC Fourth Sunset Final Report* at 6-7; and *ITC Third Sunset Final Report* at 8).
[28] *See* Final Scope Ruling at 15 (citing *ITC Fourth Sunset Final Report*).
[29] *Id.* at 16 (citing *ITC Third Sunset Final Report*).

under the majority of the orders, but were not applicable to other specific orders, including the *Thailand Order*, without such exclusion.[30]

- Saha Thai also argued that the specific exclusionary language in some CWP orders as well as the CIT's holding in *Wheatland Tube Co.* should preclude Commerce from finding that dual-stenciled pipe is covered by the *Thailand Order*.  Commerce determined that the proceedings referenced by Saha Thai and those at issue in *Wheatland Tube Co*, had importantly different scope language and records, with an explicit exclusion for dual-stenciled pipe, which was the main factual issue in *Wheatland Tube Co.*[31]

- Given that dual-stenciled pipe is certified as standard pipe under ASTM specifications and meets the other physical description of the scope language and given that Commerce found that other record information did not show an intention to omit dual-stenciled pipe from the scope of the *Thailand Order*, Commerce determined in the Final Scope Ruling that dual-stenciled pipe was included in the scope of the *Thailand Order*.[32]

*Remand Order*

Saha Thai challenged the Final Scope Ruling before the Court, and on October 6, 2021, the Court issued its holding.  In summary, the Court held in the *Remand Order* that Commerce's Final Scope Ruling unlawfully expanded the scope by ruling that dual-stenciled pipe was covered by the scope of the *Thailand Order* on the following bases:

- When the petitioners withdrew the petition covering line pipe, it concerned products classified under the Tariff Schedule of the United States Annotated (TSUSA)

---

[30] *Id.* at 16.  As the ITC noted in the *ITC Third Sunset Final Report*, "Because of differences in wall thicknesses and excluded products among the circular welded pipe scope definitions, the domestic like products defined by the Commission in the various underlying original investigations differed from one another in some respects."  *See ITC Third Sunset Final Report* at 9.
[31] *See* Final Scope Ruling at 16.
[32] *Id.* at 17.

610.3208 and 610.3209 and those "are the numbers under which line pipe, dual-stenciled or otherwise, would have been imported in 1985." The Court cited to the TSUSA in 1985 and statements on the oral argument transcript for the "Government and Wheatland's admission that line pipe and dual-stenciled pipe would have been imported under those TSUSA classifications in 1985."[33]

- The Court held that the TSUSA numbers appearing in Commerce's *Final Determination* did not list the TSUSA numbers which would have covered dual-stenciled line pipes in 1986. The Court said that the ITC report released in April 1985 that listed these TSUSA numbers in the first place addressed "material injury caused to the U.S. standard pipe industry by the importation of standard pipe from Thailand, not by line or dual-stenciled pipe."[34]

- The Court pointed out that "at no point did the ITC make a material injury determination regarding the … dual-stenciled pipe imported from Thailand."[35]

- The Court also pointed out that the ITC "did not mention dual or multi-stenciled pipe imported as line pipe" in its injury determination.[36]

- Looking beyond the administrative record, the Court referenced the fact that in the *ITC First Sunset Final Report*, in an analysis covering safeguard duties, the ITC noted that "dual-stenciled pipe imported as line pipe" was "excluded from

---

[33] *See Remand Order* at 5, 15, 32.
[34] *Id.* at 7, 32 ("Once the initial petitioners withdrew all pipes that were importable under 610.3208 and 3209 from consideration by the ITC and Commerce, those pipes were not included in either the resulting injury investigation conducted by the ITC or the antidumping order issued by Commerce").
[35] *Id.*
[36] *Id.*

antidumping orders were nonetheless subject to President Clinton's 'safeguard duties' covering line pipe."[37]

- Looking beyond the administrative record, the Court continued that the *ITC Second Sunset Final Report*, likewise, referenced the fact that the safeguard duties covering line pipe included dual-stenciled pipe, and that dual-stenciled pipe would likely be sold at a price premium over single-stenciled pipe due to additional steel requirements.[38]

- Citing the *ITC Third Sunset Final Report*, the Court found that the ITC did not specifically provide a caveat when it stated that the scope of the seven orders under review did not include dual-stenciled pipe when it stated: "Producers primarily make circular welded pipe to ASTM specifications A53, A135, and A795.40. As these standards often require engineering characteristics that overlap with other specifications, a pipe may be dual-stenciled, *i.e.*, stamped to indicate compliance with two different specifications, such as ASTM53 and API5L. This dual-stenciled pipe, which for U.S. customs purposes enters as line pipe under a different tariff subheading, is not within the scope of the orders."[39]

- Citing the *ITC Fourth Sunset Final Report*, the Court found that the ITC reiterated the treatment of dual-stenciled pipe in the *ITC Third Sunset Final Report* as it contained the same language used.[40]

---

[37] *Id.* at 11 (citing *Certain Pipe and Tube from Argentina, Brazil, Canada, India, Korea, Mexico, Singapore, Taiwan, Thailand, Turkey, and Venezuela, Inv. Nos. 701-TA-253, 731-TA-132, 252, 271, 273, 276, 277, 296, 409, 410, 532–534, 536, and 537 (First Sunset Review)*, USITC Pub. 3316 at 6 (July 2000) (*ITC First Sunset Final Report*).

[38] *Id.* at 11-12 (citing *Certain Pipe and Tube from Argentina, Brazil, India, Korea, Mexico, Taiwan, Thailand, and Turkey, Inv. Nos. 701-TA-253, 731-TA-132, 252, 271, 273, 409, 410, 532–534, and 536 (Second Sunset Review)*, USITC Pub. 3867 at 4–5 (July 2006) (*ITC Second Sunset Final Report*).

[39] *Id.* at 12.

[40] *Id.* at 12-13.

- The Court explained that at the hearing it required all parties to "write a letter identifying for the Court 'in the record of this matter where there was an instance or more than one instance of … the Government' referring 'explicitly to dual stenciled pipe as standard pipe.'"[41]

- The Court stated that the "Government and Wheatland have consistently argued" that language of CWP orders covering other countries "are not probative of the [Thailand] order's scope,"[42] but in responding to the Court's demand for explicit references to dual-stenciled pipe as standard pipe, both referenced other orders.

- The Court held that the scope language was "ambiguous without the context of the (k)(1) materials."[43]

- The Court stated that Commerce in its arguments rejected "Saha's contention that there is probative value in antidumping orders, ITC determinations and Commerce's determinations that cover the same products are from different countries," and believed that the "order's plain language unambiguously encompasses dual-stenciled pipe."[44]  Nonetheless, Commerce argued that the (k)(1) sources still support its decision.

- The CIT held that it was relevant that Thailand "did not produce dual-stenciled pipe at the time of the original investigation and order."[45]

---

[41] *Id.* at 16.
[42] *Id.* at 17 (citing U.S. 56.2 Motion Response Brief at 18-19).
[43] *Id.* at 21.
[44] *Id.* at 24.
[45] *Id.* at 25.

- The CIT held that the "ITC made no injury determination as to dual-stenciled" standard pipe and line pipe from Thailand, and, "therefore, antidumping duties cannot be imposed on those types of pipes when imported from Thailand."[46]

- The CIT held that unlike the facts in *Wheatland Tube Co.*, the scope "neither expressly included" nor "expressly excluded" the merchandise at issue, so therefore that opinion is not applicable.[47]

- Despite meeting the physical characteristics of the scope, which the Court did not disagree was the case, the Court pointed out that the original scope also included TSUSA numbers "that do not include, as all the parties agreed, the item numbers under which dual-stenciled pipe would have been imported in 1986."[48] The Court described the "language about size and diameter" of the scope as only "one-third" of the scope, and equivocated the TSUSA classifications with the physical descriptions in importance.[49] Still, the Court determined that because the scope said it covered pipe "commonly referred to" in the industry as "standard pipe," it was also important to determine if dual-stenciled pipe was "standard pipe," and on that the scope was "silent," thereby making it ambiguous.[50]

- The Court held that Commerce "cannot impose a duty on a fiction. API stenciled pipes, *i.e.*, line and dual-stenciled pipes were omitted by the decision of the petitioners themselves from the ITC's original injury investigation" and that "it is well settled that Commerce cannot 'assess antidumping duties on products

---

[46] *Id.*
[47] *Id.* at 25, n. 5.
[48] *Id.* at 27.
[49] *Id.*
[50] *Id.* at 28-29.

intentionally omitted from the ITC's injury investigation. *Wheatland Tube Co.*, 161 F.3d at 1371. Allowing Commerce to assess such duties without an injury determination 'would itself frustrate the purpose of the antidumping laws.' *Id.*"[51]

- The Court held that the "lack of" an injury determination by the ITC explicitly referencing dual-stenciled pipe was "fatal to Commerce's case."[52]

- Citing the *ITC Third Sunset Final Report* and the *ITC Fourth Sunset Final Report*, the Court notes that in speaking generally about orders from countries that had exclusions for dual-stenciled standard pipe and line pipe and orders that did not include such exclusions, that because the statements by the ITC that "dual-stenciled pipe, which enters as line pipe" was not within the scope of the orders were "unqualified" and gave "no indication that the scope language does not apply to the {*Thailand Order*}," the Court found Commerce's arguments that the language that the language was general to be "not persuasive."[53]

- Finally, the Court held that because Commerce could not find "a single instance of dual-stenciled pipe being referenced as 'standard pipe'" through the entire history of the *Thailand Order* and the sunset reviews of that order," that fact was relevant to the issue.[54]

## IV.   ANALYSIS

In compliance with the *Remand Order*, Commerce has reconsidered the sources listed in 19 CFR 351.225(k)(1) that were on the administrative record before Commerce, as well as the additional information which was not on the record but which was, nonetheless, considered by

---

[51] *Id.* at 32-33.
[52] *Id.* at 33.
[53] *See Remand Order* at 37.
[54] *Id.* at 39.

the Court, and in light of the Court's holding, on remand we must determine that dual-stenciled

pipe, which is certified as and can be used as either standard pipe or line pipe, is not covered by

the *Thailand Order*.  Respectfully, we are conducting this analysis under protest, based on

concerns with the following issues:

*The Remand Order's Citation to, and Reliance on, Extra-Record Sources Not Raised By Parties Before Commerce*

Commerce was required by statute to make its scope ruling based solely on information

on the administrative record.  Under 19 U.S.C. § 1516a(b)(1)(B)(i) describing the appropriate

standard of review, "{t}he court shall hold unlawful any determination, finding, or conclusion

found... to be unsupported by substantial evidence *on the record*." (emphasis added).[55]  The CIT

has held that judicial review must be based solely upon the administrative record compiled by

the agency during the particular review proceeding which resulted in the determination subject to

judicial review.[56]  The scope of the record for purposes of judicial review must be based upon

information which was "before the relevant decision-maker" and was presented and considered

"at the time the decision was rendered."[57]  This information, which constitutes the formal record

is the only information upon which the factual findings and legal conclusions underlying the

challenged determination could have been based, consideration of documentary evidence and

information not before Commerce could be considered a *de novo* review.[58]

---

[55] As defined under 19 U.S.C. § 1516(b)(2), the record consists of "a copy of all information presented to or obtained by the Secretary, the administering authority, or the Commission during the course of the administrative proceeding, including all governmental memoranda pertaining to the case and the record of ex parte meetings... and a copy of the determination, all transcripts or records of conferences or hearings, and all notices published in the *Federal Register*."

[56] *See Association of American School Paper Suppliers v. United States*, 683 F. Supp. 2d 1317, 1323-34 (CIT 2010) (citing *Beker Industries Corp. v. United States*, 7 CIT 313, 1984 WL 3727 (CIT 1984) (Court denied addition of information and documents from proceedings before or during the review in question that were not before Commerce at the time of its decision)).

[57] *Id.*

[58] *Id.*

In its discussion of factors supporting the Court's conclusion, the *Remand Order* considered, and quoted from, language from the *ITC First Sunset Final Report* and the *ITC Second Sunset Final Report* to support the conclusion that the ITC "intentionally" omitted dual-stenciled pipe from its initial injury determination in the *Thailand Order*.[59]  However, neither of these ITC sunset final reports[60] was the basis of arguments raised by parties in the course of the scope inquiry, and, thus, the information contained in these ITC sunset final reports was not considered by Commerce in issuing its Final Scope Ruling.[61]  In holding that Commerce did not issue a decision consistent with the evidence before it, the *Remand Order* relied on agency decisions that were not before Commerce on the administrative record, and not argued by parties before Commerce in the underlying administrative proceeding or in their initial case briefs before the Court.

In addition, in the *Remand Order*, the Court cited *Proclamation 7274*[62] concerning Section 201 safeguard duties covering line pipe issued by President Clinton.[63]  Neither Saha Thai nor Wheatland raised *Proclamation 7274* before Commerce during the scope inquiry and neither party referenced that proclamation in their Rule 56.2 briefs before the Court.  The *Remand Order* looked beyond the administrative record in citing to, and relying on, these materials, thereby holding that Commerce unlawfully did not consider information that was not before it.

---

[59] *See Remand Order* at 10-12; 35-37.

[60] Saha Thai raised arguments concerning language in the Third Sunset Final Report for Commerce to consider in its scope inquiry case brief.  *See Saha Thai's Scope Inquiry Case Brief*, dated March 30, 2020 at 12-13.

[61] The Court also states that Commerce gave "short shrift" to the (k)(1) sources.  *See Remand Order* at 24.  Commerce respectfully disagrees with this description of Commerce's Preliminary and Final Scope Rulings, as we considered all of the record evidence before us as part of our analysis and addressed each argument raised by parties.

[62] *See To Facilitate Positive Adjustment to Competition from Imports of Certain Circular Welded Carbon Quality Line Pipe, Proclamation No. 7274*, 65 FR 9191 (February 23, 2000) (*Proclamation 7274*).

[63] *See Remand Order* at 11, 36.  It is also unclear what weight should be given to *Proclamation 7274*, as presidential proclamations are not sources enumerated under 19 C.F.R. § 351.225(k)(1).

*The Remand Order's Understanding of Commerce's Interpretation of 19 CFR 351.225(k)(1) and Practice With Respect to Other Antidumping and Countervailing Duty Orders*

In determining the extent of sources to be considered under 19 CFR 351.225(k)(1), the Court agreed with Commerce that the sources listed under the regulation refer to the administrative proceeding at issue and do not direct Commerce to consider the scopes or the records of other proceedings.[64] However, the *Remand Order* appears to misunderstand Commerce's position regarding the text of other orders when it stated that the Government argued these sources are "irrelevant."[65] As Commerce stated in its Final Scope Ruling, and as the Government stated in its brief before the Court, depending on the circumstances in other proceedings, 19 CFR 351.225(k)(1) does not require review or consideration of petitions or orders involving other countries, but Commerce, nonetheless, may (and frequently does) find various materials from other proceedings informative, if information from those other proceedings is placed on the administrative record.[66] As part of its practice, Commerce frequently relies on the treatment of certain products under other orders as part of its scope analysis, including scope rulings pertaining to those other orders, as long as those scope rulings are placed on the record before it.[67]

*Commerce Believes that the Remand Order Misunderstands the ITC's Finding in the Investigation*

As part of its holding, the *Remand Order* concluded that there was no requisite specific injury determination for dual stenciled pipe for Commerce to find such pipe in scope, reasoning

---

[64] *Id.* at 38.
[65] *Id.* at 38.
[66] *See* Final Scope Ruling at 15; *see also* Government's Response to Plaintiff's Rule 56.2 Motion for Judgment Upon the Agency Record, dated March 26, 2021 at 20.
[67] Commerce recently codified this practice in its new scope regulations. New 19 CFR 351.225(k)(1)(i)(C), which became effective on November 4, 2021, was revised "to clarify that both previous or concurrent Commerce scope determinations may be considered by Commerce as part of its analysis, including prior scope rulings, memoranda, or clarifications which pertain to both the order at issue, as well as other orders with the same or similar language as

that "{s}ince their initial omission from the original injury investigation, the ITC has conducted

no subsequent injury investigation to determine whether API stenciled pipe from Thailand

injures a domestic industry.  Given that it is 'a fundamental requirement' in our law 'that an

antidumping duty order must be supported by an ITC determination of material injury covering

the merchandise in question, ' the lack of such an injury determination for API stenciled pipes is

fatal to Commerce's case."[68]  This conclusion, however, does not appear to consider that the ITC

expressly found ASTM stenciled pipe (standard pipe) from Thailand injures the domestic

industry.[69]  Dual-stenciled pipe is certified as showing compliance with two different industry

specifications, such as ASTM A53 and API 5L, which are applicable for standard pipe and line

pipe, respectively.[70]  Thus, because dual-stenciled pipe is certified as meeting ASTM compliance

for standard pipe, Commerce determined that there was the requisite underlying affirmative ITC

injury determination.[71]

     Furthermore, because the issue of scope coverage absent ITC explicit analysis in the

investigation was not an issue which was specifically raised by the parties before Commerce,

---

that of the order at issue.  This change reflects Commerce's practice and interpretation of that provision over the years, and shows that unlike the other three primary sources, this primary source includes scope determinations, such as scope rulings and scope clarifications, from other proceedings addressing similar language used in the scopes of different orders and sometimes cover the same or similar physical merchandise from other countries.  We have found it valuable over the years to consider such determination as part of our scope inquiry analysis." *Regulations to Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws, Final Rule*, Preamble, 86 FR 52300, 52323 (September 20, 2021).

[68] *See Remand Order* at 33 (citing *Wheatland Tube Co. v. United States*, 973 F. Supp. 149, 158 (CIT 1997), *aff'd*, 161 F.3d 1365 (Fed. Cir. 1998).

[69] *See Certain Welded Carbon Steel Pipes and Tubes from Turkey and Thailand:  Determinations of the Commission In Investigation No. 701-TA-253 (Final) Under the Tariff Act of 1930, Together With the Information Obtained in the Investigation; and Determination of the Commission In Investigation No. 731-TA-252 (Final) Under the Tariff Act of 1930, Together With the Information Obtained In the Investigation*, USITC Publication 1810 (February 1986) at 2. ("{T}he Commission determines... that an industry in the United States is materially injured, or threatened with material injury, by reason of imports from Thailand of welded carbon steel standard pipes and tubes, which have been found by the Department of Commerce to be sold in the United States at less than fair value (LTFV).")

[70] *See* Final Scope Ruling at 1 n. 2.

[71] *Id.* at 13-14 (Commerce stated, "{i}n the ITC Final Injury Determination, the ITC found that, as a result of imports of standard pipe from Thailand... an industry in the United States is materially injured" and further found "if a certain product is certified as standard pipe {such as dual-stenciled pipe}, then it is standard pipe regardless of

Commerce never had an opportunity to address the fact the Court of Appeals for the Federal Circuit (and the CIT in the decision below) in *Shenyang Yuanda* explicitly held that there is no requirement that a particular product be analyzed by the ITC in its industry analysis in the underlying investigation to be covered by the scope of an order and for a domestic producer of that product to have standing to challenge a scope ruling on that product.[72]  Accordingly, it is our understanding that the Federal Circuit held that there is no contingent requirement that the ITC reference a specific product in its injury analysis to have it covered by the scope of an order if that product is ultimately determined to be covered by the physical description of the general merchandise covered by the scope of an order.[73]  Accordingly, the Federal Circuit's holding in *Shenyang Yuanda* supports the argument that the absence of an injury determination specific to dual-stenciled pipe (and lack of a specific reference to dual-stenciled pipe) by the ITC and Commerce in the original investigation does not mean that Commerce was precluded from finding dual-stenciled pipe to be subject merchandise.

*The Remand Order's Understanding of the ITC's Statements in the Third and Fourth ITC Sunset Final Reports and May Not Have Considered Other Relevant Statements in those Reviews*

Finally, in the *ITC Third Sunset Final Report* and *ITC Fourth Sunset Final Report*, multiple CWP orders from other countries were reviewed along with the *Thailand Order* and a majority of these have an express exclusion for dual-stenciled standard pipe and line pipe. Specifically of the seven countries with orders under review, the antidumping duty orders on

---

whether it is also certified as line pipe.").  In addition, the *Remand Order* held that the ITC "intentionally omitted" dual-stenciled line pipe from its injury investigation, but there was no evidence from the original Commerce and ITC investigations for the *Thailand Order* on the administrative record that ITC intentionally omitted dual-stenciled pipe.  *See Remand Order* at 22, 33.

[72] *See Shenyang Yuanda Aluminum Industry Engineering Co., Ltd. v. United States*, 961 F. Supp. 2d 1291, 1299 (CIT 2014), *aff'd by Shenyang Yuanda v. United States*, 776 F.3d 1351, 1355-56 (Fed. Cir. 2015) (*Shenyang Yuanda*) ("{Plaintiffs'} suggestion that the ITC must find injury as to all domestic producers is akin to requiring every producer of {subject merchandise} expressly listed in the scope, and those covered by an order but not expressly listed, to participate in an investigation.").

[73] *Id.*

Brazil, Mexico, Korea, and Taiwan contain express exclusions for dual-stenciled pipe, whereas the orders on Thailand, Turkey, and India do not.[74]  In its Final Scope Ruling, Commerce determined that the language from these reports stating that dual-stenciled pipe was excluded from the scope of the orders was a general statement, not meant to expressly include the orders that did not have such exclusionary language, such as the *Thailand Order*.[75]  The Court held that this description was incorrect -- that lacking any qualification in the specific ITC sentences cited, the ITC meant to include the *Thailand Order*'s scope as well in the generalized statement.[76]

However, there was additional language in those ITC reports that seems to contradict that description of the ITC's understanding of the scopes of the various orders.  In the *ITC Fourth Sunset Final Report*, the ITC highlighted that there were differences in the scope of the orders based on specific product exclusions, stating, "{t}he...  CWP orders generally cover circular welded non-alloy steel pipes not more than 16 inches in outside diameter, but vary in terms of outside wall thickness specifications and *product exclusions*."[77]  Likewise, with respect to the *ITC Third Sunset Final Report* included language acknowledging the difference in each orders' scope:  "Because of differences in wall thicknesses and excluded products among the circular welded pipe scope definitions, the domestic like products defined by the Commission in the various underlying original investigations differed from one another in some respects."[78] Furthermore, the *Federal Register* notice issued as part of both reviews made no reference to dual-stenciled pipe being excluded for the purposes of the *Thailand Order*:  "The products covered by the order include certain welded carbon steel standard pipes and tubes with an

---

[74] *See ITC Third Sunset Final Report* at I-22 – I-23 Table I-12.
[75] *See* Final Scope Ruling at 15-16.
[76] *See Remand Order* at 37.  Presumably, under that interpretation, the ITC also intended to suggest that dual-stenciled pipe was excluded from the Turkey and India orders as well.
[77] *See ITC Fourth Sunset Final Report* at 6 (emphasis added)
[78] *See ITC Third Sunset Final Report* at 9.

outside diameter of 0.375 inch or more but not over 16 inches.  These products are commonly referred to in the industry as standard pipes and tubes produced to various American Society for Testing Materials (ASTM) specifications, most notably A–53, A– 120, or A–135."[79] Accordingly, we find no evidence on the record with respect to the intentions of the ITC to specifically interpret the scope of the Thailand, Turkey and Indian orders (with no express exclusions) and the Brazil, Mexico, Korea, and Taiwan orders (with express exclusions) as covering the exact same universe of merchandise in either the *ITC Third Sunset Final Report* or the *ITC Fourth Sunset Final Report*, especially in light of the fact that the ITC acknowledged in both that the scopes of the orders under review varied in terms of product exclusions.[80]

*Conclusion*

The Court held that Commerce's Final Scope Ruling was unlawful and unsupported by substantial evidence on the record.[81]  Therefore the *Remand Order* held that Commerce should reconsider the sources under 19 CFR 351.225(k)(1) in compliance with the Court's reasoning and analysis, and we have done so.  We have determined that dual-stenciled standard pipe and line pipe could not be covered by the scope of the *Thailand Order*, under the analysis, reasoning, and conclusions reached by the Court in the *Remand Order*, even if two inconsistent conclusions could be drawn from the record evidence.[82]  As we have explained, we have concerns with the *Remand Order* and, therefore, have issued these remand results of redetermination under respectful protest.  Should the Court affirm our final results of redetermination, we intend to issue instructions to U.S. Customs and Border Protection accordingly.

---

[79] *See Certain Circular Welded Carbon Steel Pipes and Tubes from India, Thailand, and Turkey; Final Results of Expedited Five-Year ("Sunset") Reviews of Antidumping Duty Orders*, 76 FR 66,893, 66,894 (October 28, 2011).
[80] *See ITC Fourth Sunset Final Report* at 6.
[81] *Remand Order* at 40.
[82] *See Sunpreme Inc. v. United States*, 946 F.3d 1300, 1308-09 (Fed. Cir. 2020); *accord United Steel & Fasteners, Inc. v. United States*, 947 F.3d 794, 798 (Fed. Cir. 2020).

## V.    COMMENTS ON DRAFT RESULTS OF REDETERMINATION

On December 10, 2021, we released our Draft Results of Redetermination to interested parties.[83]  On December 17, 2021 we received comments from Saha Thai[84] and Wheatland.[85] We respond to these comments below.

*Saha Thai's Comments*

- The Draft Results of Redetermination fully complies with the Court's *Remand Order* and is in line with applicable law and the evidentiary record.[86]

- Commerce has followed the Court's instructions and concluded that dual-stenciled standard pipe and line pipe is not covered by the *Thailand Order*.  Saha Thai supports a final results of redetermination that, if affirmed by the Court, will set aside Commerce's Final Scope Ruling.[87]

- Saha Thai strongly supports the adoption of a final results of redetermination in the same terms as Commerce's Draft Results of Redetermination.[88]

*Commerce's Position*

We agree with Saha Thai's argument that these Results of Redetermination are in full compliance with the Court's *Remand Order*.

---

[83] *See* Draft Results of Redetermination Pursuant to Court Remand, *Saha Thai Steel Pipe Public Company, Ltd., v. United States*, dated December 10, 2021 (Draft Results of Redetermination).
[84] *See* Saha Thai's Letter, "Saha Thai's Comments Concerning the Department's Draft Remand Redetermination Pursuant to the Court Remand in Slip Op. 21-135. Court No. 1:20-cv-133 Circular Welded Carbon Steel Pipe and Tubes from Thailand," dated December 17, 2021 (Saha Thai's Draft Redetermination Comments).
[85] *See* Wheatland's Letter, "Circular Welded Carbon Steel Pipes and Tubes:  Comments on Draft Remand Redetermination," dated December 17, 2021 (Wheatland's Draft Redetermination Comments).
[86] *See* Saha Thai's Draft Redetermination Comments at 2.
[87] *Id*.
[88] *Id*.

*Wheatland's Comments*

*Wheatland Comment 1:  The CIT's Opinion and Remand Order and Commerce's Draft Results of Redetermination are Not Supported by Evidence on the Record But Instead Impermissibly Rely on Evidence Outside the Record*

- In its opinion, the CIT substituted its own judgment before that of Commerce and conducted a *de novo* review of its own, expanding the record of the review by relying on sources outside of the record before Commerce in the underlying scope inquiry and improperly excising relevant evidence from the record when it directly contradicted the CIT's own findings of facts.[89]

- The CIT's judicial review is limited to whether Commerce's determination is supported by substantial evidence on the record and otherwise in accordance with law. Nonetheless, the CIT repeatedly looked outside the administrative record, citing to the *ITC First Sunset Final Report*, the *ITC Second Sunset Final Report*, and *Proclamation 7274*.  None of these documents were placed on the administrative record before Commerce.  Therefore, it is impossible that these sources could have been considered "record evidence" to either support or detract from Commerce's scope determination. The CIT acted *sua sponte* to develop its own factual record and conducted its own *de novo* scope inquiry.  Such action far exceeds the limits of judicial review of Commerce's determinations provided by the statute, and the CIT's reliance on sources outside the record is misguided.[90]

- The U.S. Supreme Court has recognized that "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court," and the CIT has applied this principle in its judicial review of

---

[89] *See* Wheatland's Draft Redetermination Comments at 2.
[90] *Id*. at 3.

antidumping determinations conducted by Commerce.[91]  Similarly, the Federal Circuit has also cautioned against expansion of the record by the reviewing court to include information that was not before the administrative agency.[92]

- Because Commerce's Draft Results of Redetermination impermissibly relied on evidence that was not part of the record of the underlying scope inquiry, the Draft Results of Redetermination is not supported by substantial evidence on the record.[93]

*Commerce's Position*

We agree with Wheatland's argument that the conclusion of these Results of Redetermination is problematic because it is based, in part, on sources relied upon by the Court which were outside of the record before Commerce in the underlying scope inquiry and arguments pertaining to that non-record evidence that were not raised before the agency during the underlying scope inquiry.  We also agree that the agency cannot be expected to make determinations based on facts and arguments in the first instance that neither it, nor interested parties, placed on the record.  However, as we have explained, despite this concern, we do not believe that the Court's *Remand Order* permits Commerce to find that duel-stenciled standard pipe and line pipe is included in the scope of the *Thailand Order*.

*Wheatland Comment 2:  Commerce's Draft Results of Redetermination Ignores Relevant Evidence on the Record*

- The Draft Remand Redetermination ignores evidence on the record that shows examples from other country proceedings where the scopes contain language demonstrating dual-stenciled pipe is referred to as standard pipe,[94] *i.e.*, evidence that is directly relevant to the

---

[91] *Id*. at 4 (citing *Sao Ta Foods Joint Stock Co. v. United States*, 475 F. Supp. 3d 1283, 1287 (CIT 2020)).
[92] *Id*.
[93] *Id*.
[94] *See* ITC Fourth Final Sunset Report at I-12-I-13.

key question of whether dual-stenciled pipe is covered by the scope of the *Thailand Order*.[95]

- The CIT has failed to recognize Commerce's established practice with respect to the interpretation of 19 CFR 351.225(k)(1), stating that Commerce could not rely on this evidence because it did not pertain specifically to the *Thailand Order*. However, as Commerce correctly has recognized, while its regulation does not require it to review or consider petitions or orders involving other countries, Commerce nonetheless may do so when such information is placed on the administrative record – as it was in this scope inquiry. This longstanding practice has now been codified in Commerce's updated scope regulations.[96]

*Commerce's Position*

We agree with Wheatland's argument that the conclusion of these Results of Redetermination is problematic because it is inconsistent with the provided examples of dual-stenciled pipe being referred to as standard pipe in the scope languages of the other country proceedings covering similar subject merchandise from other countries.[97] We also agree that Commerce may, though is not required to, consider such relevant evidence from other country proceedings when it is before the agency. However, as we have explained, despite this concern, we do not believe that the Court's *Remand Order* permits Commerce to reach another conclusion other than that duel-stenciled standard pipe and line pipe is not included in the scope of the *Thailand Order*.

---

[95] *Id*. at 4-5 (citing *Remand Order* at 38).
[96] *Id*. at 5.
[97] *See* ITC Fourth Final Sunset Report at I-12-I-13.

24

*Wheatland Comment 3:  Commerce's Draft Results of Redetermination is Based on a Fundamental Misunderstanding of the ITC's Final Determination in the Original Investigation*

- The CIT misapprehended the ITC's final injury determination in the original investigation,[98] finding that it could not have made an injury finding with respect to dual-stenciled pipe because Thai producers were not manufacturing dual-stenciled pipe at the time of the original investigation.  The CIT failed to appreciate that dual-stenciled pipe has the same physical characteristics as standard pipe that the ITC found to be injurious to the domestic industry in the original investigation.[99]

- Moreover, the Federal Circuit has held that there is no requirement that the ITC reference a specific product in its injury analysis to have it covered by the scope of an order if that product is ultimately determined to be covered by the physical description of the general merchandise covered by the scope of an order.  Not mentioning specific product specifications does not mean that those particular types of product are not covered by the scope of an order.  In fact, there are many types of pipe produced to specifications not specifically discussed by the ITC that, nonetheless, would be covered by the scope.[100]

- Furthermore, it would make no difference if Thailand did not produce or export these particular types of product during the ITC's original investigation; they would still be covered by the scope of the final order if Thailand began producing and exporting them to the United States today.[101]

- It is the purview of Commerce – not the ITC – to determine whether merchandise that shares the physical characteristics of subject merchandise is included with the scope of

---

[98] *See* ITC Final Injury Determination.
[99] *Id*. at 6.
[100] *Id*.
[101] *Id*. at 6-7 (citing *Shenyang Yuanda*, 961 F. Supp. 2d at 1299).

the order.  Indeed, the CIT's requirement that the ITC specifically mention every product

that may be within the scope of an order in its injury determination directly conflicts with

the provision of the statute that allows Commerce to make factual determinations about

later-developed merchandise to prevent circumvention.[102]

- The Draft Results of Redetermination relies on the CIT's flawed understanding of the

  ITC's final determination and is not in accordance with law.[103]

*Commerce's Response*

We agree with Wheatland's argument that there is no requirement that the ITC reference

a specific product in its injury analysis to have it covered by the scope of an order if that product

is determined to be covered by the physical description of the general merchandise covered by

the scope of an order.[104]  Furthermore, we agree that it is the purview of Commerce to determine

whether merchandise that shares the physical characteristics of subject merchandise is included

with the scope of the order.  However, as we have explained, despite this concern, we do not

believe that the Court's *Remand Order* permits Commerce to find that duel-stenciled standard

pipe and line pipe is included in the scope of the *Thailand Order*.

*Wheatland Comment 4:  Commerce's Draft Results of Redetermination Fails to Properly*
*Account for All of the ITC's Statements in the Third and Fourth ITC Sunset Final Reports*

- As Commerce notes, there is no evidence on the record with respect to the intentions of

  the ITC to specifically interpret the scope of all of the different orders at issue in the *ITC*

  *Third Sunset Final Report* and the *ITC Fourth Sunset Final Report* as covering the exact

  same universe of merchandise, and in fact, any finding of such an intention would seem

---

[102] *Id.* at 7.
[103] *Id.*
[104] *See Shenyang Yuanda*, 961 F. Supp. 2d. at 1299, *aff'd* 776 F.3d at 1355-56.

26

contradicted by the fact that the scopes of the orders under review varied in terms of product exclusions [105]  Nonetheless, Commerce, in the Draft Results of Redetermination, relies on these *Reports* to support its finding that dual-stenciled pipe is not covered by the scope of the *Thailand Order*.  This conclusion is contradicted by Commerce's own well-reasoned analysis in the Draft Results of Redetermination.[106]

*Commerce's Response*

We agree with Wheatland's argument that the conclusion of these Results of Redetermination does not rely on certain statements by the ITC in the *ITC Third Sunset Final Report* or the *ITC Fourth Sunset Final Report* which acknowledge that the scopes of orders covering merchandise from different countries did not cover the same universe of merchandise.[107]  We also agree that those statements seem to contradict the CIT's finding that the ITC intended to cover the same merchandise (or at least dual-stenciled pipe) equally in all of those orders.  However, as we have explained, despite this concern, we do not believe that the Court's *Remand Order* permits Commerce to find that duel-stenciled standard pipe and line pipe is included in the scope of the *Thailand Order*.

## VI.     FINAL RESULTS OF REDETERMINATION

As a result of this redetermination, we have determined, under protest, that dual-stenciled standard pipe and line pipe is outside the scope of the *Thailand Order*.  Should the Court sustain

---

[105] *Id*. at 7-8.
[106] *Id*.
[107] *See, e.g.*, ITC Third Sunset Final Report at 9; ITC Fourth Sunset Final Report at 6.

these final results of redetermination, we will issue appropriate instructions to U.S. Customs and

Border Protection accordingly.

1/4/2022

X

Signed by: RYAN MAJERUS

_____

Ryan Majerus
Deputy Assistant Secretary
 for Policy and Negotiations,
 performing the non-exclusive functions and duties
 of the Assistant Secretary for Enforcement and Compliance