UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| SAHA THAI STEEL PIPE PUBLIC COMPANY LIMITED,<br><br>*Plaintiff,*<br><br>v.<br><br>UNITED STATES,<br><br>*Defendant,*<br><br>WHEATLAND TUBE COMPANY,<br><br>*Defendant-Intervenor* | Hon. Stephen A. Vaden, Judge<br>Court No. 20-00133 |

**DEFENDANT-INTERVENOR WHEATLAND TUBE COMPANY'S
COMMENTS ON REMAND REDETERMINATION**

Roger B Schagrin
Luke A. Meisner
Kelsey M. Rule
SCHAGRIN ASSOCIATES
900 7th Street NW
Suite 500
Washington, D.C. 20001

*Counsel to Defendant-Intervenor Wheatland Tube Company*

Dated: February 18, 2022

## Table of Contents

Table of Authorities ................................................................................................................ ii

I.  The Court's Remand Opinion and Order ........................................................................ 2

II. Commerce's *Remand Redetermination* Is Not Supported by Evidence on the Record and Instead Impermissibly Relies on Evidence Outside the Record ......................................... 2

III. Commerce's *Remand Redetermination* Ignores Relevant Evidence on the Record ........... 4

IV. Commerce's *Remand Redetermination* Is Based on a Misunderstanding of the ITC's Final Determination in the Original Investigation ............................................................. 5

V.  Commerce's *Remand Redetermination* Fails to Properly Account for All of the ITC's Statements in the Third and Fourth ITC Sunset Final Reports ........................................... 8

VI. Conclusion ................................................................................................................... 9

CERTIFICATE OF COMPLIANCE ............................................................................................. 10

## Table of Authorities

**CASES**

*Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374 (Fed. Cir. 2009) ................................... 4

*Camp v. Pitts*, 411 U.S. 138, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973) ............................................ 3

*Gerber Food (Yunnan) Co., Ltd. v. United States*, 387 F. Supp. 2d 1270 (Ct. Int'l Trade 2005) .. 5

*Murakami v. United States*, 46 Fed. Cl. 731 (2000), *aff'd*, 398 F.3d 1342 (Fed. Cir. 2005) .......... 4

*Saha Thai Steel Pipe Public Company, Ltd. v. United States*, Court No. 20-00133, Slip Op. 21-135 (CIT October 6, 2021) .................................................................................................... *passim*

*Sao Ta Foods Joint Stock Co. v. United States*, 475 F. Supp. 3d 1283 (Ct. Int'l Trade 2020) ....... 4

*Shenyang Yuanda Aluminum Industry Engineering Co., Ltd. v. United States*, 961 F. Supp. 2d 1291 (Ct. Int'l Trade 2014), *aff'd,* 776 F.3d 1351 (Fed. Cir. 2015) .......................................... 6

*Wheatland Tube Co. v. United States*, 973 F. Supp. 149 (Ct. Int'l Trade 1997), *aff'd*, 161 F.3d 1365 (Fed. Cir. 1998) ................................................................................................................ 5

**STATUTES**

19 U.S.C. § 1516a(b)(1)(B)(i) ....................................................................................................... 2

19 U.S.C. § 1677j .......................................................................................................................... 7

**OTHER AUTHORITIES**

*Certain Circular Welded Pipe and Tube from Brazil, India, Korea, Mexico, Taiwan, Thailand, and Turkey (Final)*, Inv. Nos. 701-TA-253 and 731-TA-132, 252, 271, 273, 532-534, and 536 (Fourth Review), USITC Pub. 4754 (January 2018) .................................................................. 6

*Certain Pipe and Tube from Argentina, Brazil, Canada, India, Korea, Mexico, Singapore, Taiwan, Thailand, Turkey, and Venezuela, Inv. Nos. 701-TA-253, 731-TA-132, 252, 271, 273, 276, 277, 296, 409, 410, 532–534, 536, and 537 (First Sunset Review)*, USITC Pub. 3316 (July 2000) ............................................................................................................................... 3

*Certain Pipe and Tube from Argentina, Brazil, India, Korea, Mexico, Taiwan, Thailand, and Turkey, Inv. Nos. 701-TA-253, 731-TA-132, 252, 271, 273, 409, 410, 532–534, and 536 (Second Sunset Review)*, USITC Pub. 3867 (July 2006) ........................................................... 3

*Certain Welded Carbon Steel Pipes and Tubes from Turkey and Thailand (Final),* Inv. Nos. 701-TA-253 and 731-TA-252, USITC Pub. 1810 (Feb. 1986) (USITC Pub. 1810) .......................... 6

*Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws*, 86 Fed. Reg. 52,300 (Dep't Commerce Sept. 20, 2021) (final rule) ....................... 5

*To Facilitate Positive Adjustment to Competition from Imports of Certain Circular Welded Carbon Quality Line Pipe, Proclamation No. 7274*, 65 FR 9191 (February 23, 2000) ............. 3

**REGULATIONS**

19 C.F.R. § 351.225(k)(1) ......................................................................................................... 1, 4

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| SAHA THAI STEEL PIPE<br>PUBLIC COMPANY LIMITED,<br><br>                  *Plaintiff,*<br><br>    v.<br><br>UNITED STATES,<br><br>                  *Defendant,*<br><br>WHEATLAND TUBE COMPANY,<br><br>              *Defendant-Intervenor* | Hon. Stephen A. Vaden, Judge<br>Court No. 20-00133 |

**DEFENDANT-INTERVENOR WHEATLAND TUBE COMPANY'S
COMMENTS ON REMAND REDETERMINATION**

On behalf of Defendant-Intervenor Wheatland Tube Company ("Wheatland"), we hereby submit the following comments on the final remand redetermination issued by the U.S. Department of Commerce ("Commerce") pursuant to the remand in the above-captioned action ("*Remand Redetermination*"). In *Saha Thai Steel Pipe Public Company, Ltd. v. United States*, Court No. 20-00133, Slip Op. 21-135 (CIT October 6, 2021) (ECF 54) ("*Remand Opinion and Order*"), the Court directed Commerce to conduct additional analysis pursuant to the agency's regulations at 19 C.F.R. § 351.225(k)(1) to determine whether dual-stenciled pipe is covered by the antidumping duty order on circular welded pipe ("CWP") from Thailand (the "Order"). As discussed in greater detail below, Commerce's *Remand Redetermination* that dual-stenciled pipe is not covered by the of scope of the Order is at odds with Commerce's own additional analysis, is not supported by the record evidence in this case, and is otherwise not in accordance with law.

1


Accordingly, this Court should once again remand this case to Commerce with instructions to find that dual-stenciled pipe is, in fact, covered by the scope of the Order.

**I.      The Court's Remand Opinion and Order**

In its *Remand Opinion and Order*, the Court found that, because Thai producers did not manufacture dual-stenciled pipe at the time of the original investigation, such pipe could not have been included in the scope of the Order, regardless of whether it meets the physical characteristics of subject merchandise. *Remand Opinion and Order* at 39-40. The Court further found that the U.S. International Trade Commission ("ITC") made no injury determination with respect to dual-stenciled pipe in the original investigation, giving no deference to Commerce's determination that the original injury determination regarding standard pipe encompasses CWP that meets both American Society for Testing and Materials ("ASTM") and American Petroleum Institute ("API") specifications. *Id.* at 40. In its opinion, the Court substituted its own judgment before that of the agency and conducted a *de novo* review of its own, expanding the record of the review by relying on sources outside of the record before the agency in the underlying proceeding while at the same time failing to consider relevant evidence from the record that contradicted the Court's own findings of facts.

**II.     Commerce's *Remand Redetermination* Is Not Supported by Evidence on the Record and Instead Impermissibly Relies on Evidence Outside the Record**

As Commerce points out in its *Remand Redetermination*, the agency was required by the statute to make its scope ruling based solely on the information contained in the administrative record. *Remand Redetermination* at 14 (citing 19 U.S.C. § 1516a(b)(1)(B)(i)). The Court's judicial review is limited to whether Commerce's determination is supported by substantial evidence *on the record* and otherwise in accordance with law. *Remand Opinion and Order* at 18 (citing 19 U.S.C. § 1516a(b)(1)(B)(i)). Nonetheless, the Court looked outside the administrative

record, citing to the *ITC First Sunset Final Report*, the *ITC Second Sunset Final Report*, and *Presidential Proclamation 7274* in its opinion. *Id.* at 11-12, 36 (citing *Certain Pipe and Tube from Argentina, Brazil, Canada, India, Korea, Mexico, Singapore, Taiwan, Thailand, Turkey, and Venezuela,* Inv. Nos. 701-TA-253, 731-TA-132, 252, 271, 273, 276, 277, 296, 409, 410, 532–534, 536, and 537 (First Sunset Review), USITC Pub. 3316 at 6 (July 2000) ("*ITC First Sunset Final Report*"); *Certain Pipe and Tube from Argentina, Brazil, India, Korea, Mexico, Taiwan, Thailand, and Turkey,* Inv. Nos. 701-TA-253, 731-TA-132, 252, 271, 273, 409, 410, 532–534, and 536 (Second Sunset Review), USITC Pub. 3867 at 4–5 (July 2006) ("*ITC Second Sunset Final Report*"); *To Facilitate Positive Adjustment to Competition from Imports of Certain Circular Welded Carbon Quality Line Pipe, Proclamation No. 7274*, 65 Fed. Reg. 9191 (February 23, 2000) ("*Proclamation 7274*").

None of these documents were placed on the administrative record before Commerce. Therefore, it is impossible that any of these sources could have been considered "record evidence" to either support or detract from Commerce's scope determination. Indeed, no party cited to *Proclamation 7274* in its Rule 56.2 briefs before the Court, highlighting the fact that the Court in this instance acted *sua sponte* to develop its own factual record and conducted its own *de novo* scope inquiry. Such action exceeds the limits of judicial review of Commerce's determinations provided by the statute. As Commerce did not have these sources before it as part of the record of this proceeding, the Court should not have relied on these sources in its opinion.

As the U.S. Supreme Court has recognized, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973). The Court has applied this principle in its judicial review of antidumping proceedings conducted by

3

Commerce. For example, in *Sao Ta Foods Joint Stock Co. v. United States*, the Court declined to consider certain attachments to a party's brief as well as references to certain websites as part of its judicial review, "because that information does not appear in the administrative record." *Sao Ta Foods Joint Stock Co. v. United States*, 475 F. Supp. 3d 1283, 1287 (Ct. Int'l Trade 2020). The Court recognized: "Judicial review is generally limited to the full administrative record before the agency at the time it rendered its decision." *Id.* (internal citation omitted). The Federal Circuit has similarly cautioned against expansion of the record by the reviewing court to include information that was not before the administrative agency, explaining that "{t}he purpose of limiting review to the record actually before the agency is to guard against courts using new evidence to 'convert the "arbitrary and capricious" standard into effectively *de novo* review.'" *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1380 (Fed. Cir. 2009) (quoting *Murakami v. United States*, 46 Fed. Cl. 731, 735 (2000), *aff'd*, 398 F.3d 1342 (Fed. Cir. 2005)).

The bottom line is that, because Commerce's *Remand Redetermination* impermissibly relies on evidence that was not part of the record of the scope inquiry, the *Remand Redetermination* is not supported by substantial evidence on the record.

**III.     Commerce's *Remand Redetermination* Ignores Relevant Evidence on the Record**

Commerce's *Remand Redetermination* is also not supported by record evidence because it now ignores evidence that was on the record which showed that dual-stenciled pipe is considered to be standard pipe – *i.e.*, evidence that is directly relevant to the key question of whether dual-stenciled pipe is covered by the scope of the order. *See Remand Opinion and Order* at 38 (discussing "examples of dual-stenciled pipe being referred to as standard pipe within the record"). This is because, in its *Remand Opinion and Order*, the Court did not recognize Commerce's established practice with respect to the interpretation of 19 C.F.R. § 351.225(k)(1)

4

and stated that Commerce could not rely on this evidence because it did not pertain specifically to the Order on CWP from Thailand. *Id.* at 39. However, as Commerce has recognized, while its regulation does not require the agency to review or consider petitions or orders involving other countries, Commerce nonetheless may do so when such information is placed on the administrative record—as it was in underlying proceeding in this case. Indeed, this longstanding practice has now been codified in Commerce's updated scope regulations. *See* 19 C.F.R § 351.225(k)(1)(i)(C) (2021). *See also Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws*, 86 Fed. Reg. 52,300 (Dep't Commerce Sept. 20, 2021) (final rule).

In sum, Commerce's *Remand Redetermination* fails to take into account specific examples of dual-stenciled pipe being referred to by the ITC and Commerce as standard pipe. When Commerce ignores record information that squarely contradicts its determination, that determination is not supported by substantial evidence. *Gerber Food (Yunnan) Co., Ltd. v. United States*, 387 F. Supp. 2d 1270, 1272-73 (Ct. Int'l Trade 2005) (holding Commerce's determination unsupported by substantial evidence where the determination "required Commerce to ignore evidence on the record unfavorable to its desired outcome"). Thus, Commerce's *Remand Redetermination* is not supported by substantial evidence.

**IV.    Commerce's *Remand Redetermination* Is Based on a Misunderstanding of the ITC's Final Determination in the Original Investigation**

In its *Remand Opinion and Order*, the Court found that the ITC could not have made an injury finding with respect to dual-stenciled pipe because Thai producers were not manufacturing dual-stenciled pipe at the time of the original investigation. *Remand Opinion and Order* at 33 (citing *Wheatland Tube Co. v. United States*, 973 F. Supp. 149, 158 (Ct. Int'l Trade 1997), *aff'd*, 161 F.3d 1365 (Fed. Cir. 1998)). However, this finding does not recognize that dual-stenciled

5

pipe *has the same physical characteristics* as the standard pipe that the ITC found to be injurious to the domestic industry in the original investigation. As Commerce recognized in its *Remand Redetermination,* dual-stenciled standard pipe is produced to ASTM specification A-53 and API specification API-5L. *Remand Redetermination* at 17. Thus, this pipe is produced to a specification (ASTM A-53) that was expressly referenced by the ITC as a type of pipe that is standard pipe that was covered by the investigations. *Id.*

Moreover, the Federal Circuit has held that the ITC need not reference a specific product in its injury analysis to have that product covered by the scope of an order, so long as that product is covered by the physical description of the merchandise in the scope of the order. *See Shenyang Yuanda Aluminum Industry Engineering Co., Ltd. v. United States*, 961 F. Supp. 2d 1291, 1299 (Ct. Int'l Trade 2014), *aff'd,* 776 F.3d 1351, 1355-56 (Fed. Cir. 2015). Here, in its original injury investigation, the ITC stated that standard pipe is generally produced to ASTM specifications A-120, A-53, or A-135. *See Certain Welded Carbon Steel Pipes and Tubes from Turkey and Thailand (Final),* Inv. Nos. 701-TA-253 and 731-TA-252, USITC Pub. 1810 (Feb. 1986) (USITC Pub. 1810) ("*ITC Final Injury Determination*") at I-2. The ITC did not specifically mention pipe that is produced to ASTM A-795, A-500, A-252, F-1083, or A-513. *Compare id.* with *Certain Circular Welded Pipe and Tube from Brazil, India, Korea, Mexico, Taiwan, Thailand, and Turkey (Final)*, Inv. Nos. 701-TA-253 and 731-TA-132, 252, 271, 273, 532-534, and 536 (Fourth Review), USITC Pub. 4754 (January 2018) ("*ITC Fourth Sunset Final Report*") at 6-7 (discussing various specifications of standard pipe that were not mentioned in the original investigation). Nor did the ITC mention in the original investigation any particular specifications of pipe published by the American Society of Mechanical Engineers. *Compare ITC Final Injury Determination* with *ITC Fourth Sunset Final Report* at 7. But that does not

mean that the Order does not cover pipe made to ASTM A-795, A-500, A-252, F-1083, A513 specifications or pipe made to ASME specifications. If pipe meeting these specifications meets the physical description of the merchandise in the Order, than the pipe is covered by the Order.

Furthermore, it makes no difference whether Saha Thai or any other Thai company produced these particular types of CWP during the ITC's original injury investigation. They would still be covered by the scope of the final order if a Thai company began producing and exporting them to the United States today. Indeed, the statute contemplates that an order can cover merchandise that was developed after the original period of investigation, so long as the later-developed merchandise has the same general physical characteristics as the merchandise with respect to which the order was originally issued. *See* 19 U.S.C. § 1677j(d). The statute also contemplates that an order can cover merchandise that was not produced in the subject country during the original period of investigation where the merchandise has undergone minor alterations in form or appearance — even if the altered merchandise is in a different tariff classification as the merchandise for which the order was originally issued. *Id.* § 1677j(c).[1]

The important takeaway is that the Order still covers dual-stenciled pipe, even if the ITC did not reference dual-stenciled pipe in its original injury determination since there was no production of dual-stenciled pipe in Thailand at that time. The *Remand Redetermination*'s interpretation of the ITC's final injury determination, while consistent with the Court's *Remand Opinion and Order*, is flawed and would severely diminish the remedies provided by Congress to domestic industries through the antidumping statute. It would allow foreign producers to shift

---

[1] Here, there was no need for Commerce to conduct a circumvention inquiry based on the statutory provisions governing later-developed or minor altered merchandise, because Commerce found that the plain language of the scope already covered dual-stenciled pipe. *See* Commerce Letter re: Scope Inquiry on Line Pipe (July 29, 2019), APPX1000-1001.

7

production from covered merchandise that they were previously producing to other types of merchandise not referenced by the ITC in its original injury determination but meeting the physical characteristics of the scope to avoid payment of duties that are designed to level the playing field for domestic producers. Indeed, this is precisely what Saha Thai did in this case when it shifted production from single-stenciled pipe to dual-stenciled pipe.

V.  **Commerce's *Remand Redetermination* Fails to Properly Account for All of the ITC's Statements in the Third and Fourth ITC Sunset Final Reports**

In its Final Scope Ruling, Commerce determined that language from the *ITC Third Sunset Final Report* or the *ITC Fourth Sunset Final Report* stating that dual-stenciled pipe was excluded from the scope of the orders was a general statement, not meant to include orders that did not have such exclusionary language such as the Order on CWP from Thailand. *See* Final Scope Ruling at 15-16, Appx2025-2026. In its *Remand Opinion and Order*, the Court found that this was incorrect and that the ITC intended to include the Order on CWP from Thailand in its general statement that scope of the orders did not include dual-stenciled pipe. *Remand Opinion and Order* at 37.

In its *Remand Redetermination*, Commerce found that there is "no evidence on the record with respect to the intentions of the ITC to specifically interpret the scope of the Thailand, Turkey and Indian orders (with no express exclusions) and the Brazil, Mexico, Korea, and Taiwan orders (with express exclusions) as covering the exact same universe of merchandise in either the *ITC Third Sunset Final Report* or the *ITC Fourth Sunset Final Report*, especially in light of the fact that the ITC acknowledged in both that the scopes of the orders under review varied in terms of product exclusions." *Remand Redetermination* at 20. In fact, Commerce finds that there was additional language in those ITC reports that contradicts a finding that the ITC intended to include the Order on CWP from Thailand in its general statement. *Id.* at 19. Nonetheless, Commerce relies on these ITC reports in its *Remand Redetermination* to support its finding that

8

dual-stenciled pipe is not covered by the scope of the order. In other words, Commerce's determination contradicts its own well-reasoned analysis as well as language in the ITC reports that indicates the ITC did not intend to include the Order on CWP from Thailand in its general statement that dual-stenciled pipe is excluded from the orders. For this reason as well, the *Remand Redetermination* is not supported by substantial evidence or in accordance with law.

## VI. Conclusion

For the foregoing reasons, Commerce's *Remand Redetermination* is not supported by substantial evidence on the record but instead relies on evidence that was not on the record of the scope inquiry, ignores directly relevant evidence that was on the record, and relies on erroneous interpretations of the ITC's determinations with respect to CWP. Accordingly, this Court should remand this proceeding again with instructions that Commerce find that dual-stenciled pipe is covered by the scope of the Order.

                Respectfully,

                /s/ Luke A. Meisner
                Roger B Schagrin
                Luke A. Meisner
                Kelsey M. Rule
                SCHAGRIN ASSOCIATES
                900 7th Street NW
                Suite 500
                Washington, D.C. 20001

                *Counsel to Defendant-Intervenor Wheatland Tube Company*

Dated: February 18, 2022

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that the foregoing brief complies with the Standard Chambers Procedures of the U.S. Court of International Trade in that it contains 2,617 words, including accompanying motion, text, headings, table of contents, table of authorities and counsel's signature block, according to the word count function of Microsoft Word used to prepare this brief.

                                            /s/ Luke A. Meisner
                                            Luke A. Meisner

Dated: February 18, 2022