**UNITED STATES DEPARTMENT OF COMMERCE**
International Trade Administration
Washington, D.C. 20230

A-549-502
Remand
Slip Op. 21-135
Scope – Dual-Stenciled Pipe
**Public Document**
E&C/O VII: Team

*Saha Thai Steel Pipe Public Company, Ltd., v. United States*
**Court No. 1:20-cv-133, Slip Op. 21-135 (CIT October 6, 2021)**

**AMENDED FINAL RESULTS OF REDETERMINATION
PURSUANT TO COURT REMAND**

**I.    SUMMARY**

The Department of Commerce (Commerce) has prepared these final results of redetermination pursuant to the remand order of the U.S. Court of International Trade (Court or CIT) in *Saha Thai Steel Pipe Public Company, Ltd., v. United States*, Court No. 1-20-cv-133, Slip Op. 21-135 (October 6, 2021) *(Remand Order)*. This remand concerns the final scope ruling issued by Commerce after conducting a scope inquiry under the 1986 antidumping duty order on circular welded carbon steel pipes and tubes (CWP) from Thailand.[1]  In its *Remand Order*, the Court directed Commerce to file its remand redetermination with the Court within 90 days from the date of issuance of the *Remand Order*. The Court remanded Commerce to conduct an analysis that reconsiders the sources listed in 19 CFR 351.225(k)(1) in light of its holding to determine whether dual-stenciled pipe, which is certified for use in standard pipe or line pipe applications, falls within the scope of the *Thailand Order*.[2]

In accordance with the *Remand Order*, Commerce has reconsidered record sources under 19 CFR 351.225(k) in light of the reasoning, analysis and conclusions of the Court, and under

---

[1] *See* Memorandum, "Antidumping Duty Order on Circular Welded Carbon Steel Pipes and Tubes from Thailand: Final Scope Ruling on Line Pipe and Dual-Stenciled Standard and Line Pipe," dated June 30, 2020 (Final Scope Ruling).
[2] *See Antidumping Duty Order; Circular Welded Carbon Steel Pipes and Tubes from Thailand*, 51 FR 8341 (March 11, 1986) (*Thailand Order*).

respectful protest,[3] for the reasons explained below, we find on remand that dual-stenciled standard pipe and line pipe are not covered by the scope of *Thailand Order*.

## II.   SCOPE OF THE *THAILAND ORDER*

The products covered by the *Thailand Order* are certain circular welded carbon steel pipes and tubes from Thailand.  The subject merchandise has an outside diameter of 0.375 inches or more, but not exceeding 16 inches, of any wall thickness.  These products, which are commonly referred to in the industry as "standard pipe" or "structural tubing" are hereinafter designated as "pipes and tubes."  The merchandise is classifiable under the Harmonized Tariff Schedule of the United States (HTSUS) subheadings 7306.30.1000, 7306.30.5025, 7306.30.5032, 7306.30.5040, 7306.30.5055, 7306.30.5085 and 7306.30.5090.  Although the HTSUS subheadings are provided for convenience and purposes of U.S. Customs and Border Protection (CBP), the written description of the merchandise subject to the *Thailand Order* is dispositive.

## III.   BACKGROUND

On November 22, 2019, Commerce self-initiated a scope inquiry to determine whether dual-stenciled standard pipe and line pipe (dual-stenciled pipe) and single-stenciled line pipe are subject to the *Thailand Order*.[4]

*Preliminary Scope Ruling*

On February 24, 2020, Commerce issued a Preliminary Scope Ruling.[5]  Both a domestic producer of the domestic like product, Wheatland Tube Company (Wheatland), and an exporter

---

[3] *See Viraj Group, Ltd. v. United States*, 343 F.3d 1371, 1376-77 (Fed. Cir. 2003).
[4] *See* Memorandum, "Antidumping Duty Order on Circular Welded Carbon Steel Pipes and Tubes from Thailand: Self Initiation of Scope Inquiry on Line Pipe and Dual-Stenciled Standard Line Pipe," dated November 22, 2019.
[5] *See* Memorandum, "Antidumping Duty Order on Circular Welded Carbon Steel Pipes and Tubes from Thailand: Preliminary Scope Ruling on Line Pipe and Dual-Stenciled Standard Line Pipe," dated February 24, 2020 (Preliminary Scope Ruling).

of the subject merchandise, Saha Thai Steel Pipe (Public) Company, Ltd. (Saha Thai), participated in Commerce's scope inquiry.

- Commerce and both parties placed information on the record, and Wheatland and Saha Thai provided comments and rebuttal comments.[6] Commerce considered all of the information on the administrative record, as well as the parties' comments, in issuing its Preliminary Scope Ruling.

- Commerce preliminarily determined that single-stenciled line pipe was not covered by the scope of the *Thailand Order*, but that pipe that is dual-stenciled standard pipe and line pipe to "indicate compliance with two different industry specifications, as conforming to industry standards for both standard pipe and line pipe, such as ASTM A53 and API 5L" was covered by the scope of the *Thailand Order*.[7]

- Commerce explained that the *Thailand Order* covers only "standard pipe," and cited to descriptions in the Petition and in the *ITC Final Injury Determination*, for descriptions of what products are covered by the term "standard pipe."[8]

- Commerce explained that line pipe was not covered by the *Thailand Order* and that "during the underlying investigation, the petitioners withdrew line pipe from the scope of the Petition with respect to Thailand" and the U.S. International Trade Commission (ITC) "explicitly" stated that the "underlying investigation of steel pipe from Thailand did not

---

[6] *See* Memorandum, "Placing Document of the Record of the Line Pipe Scope Inquiry," dated December 6, 2019; Wheatland's Letter, "Circular Welded Carbon Steel Pipes and Tubes from Thailand: Response to November 22, 2019 Request for Comments," dated December 12, 2019; Saha Thai's Letter, "Saha Thai's Comments on 'Line Pipe' Scope Inquiry Circular Welded Carbon Steel Pipe and Tubes from Thailand," dated December 20, 2019; and Saha Thai's Letter, "Saha Thai's Rebuttal Comments on 'Line Pipe' Scope Inquiry Circular Welded Carbon Steel Pipe and Tubes from Thailand," dated December 30, 2019.
[7] *See* Preliminary Scope Ruling at 3.
[8] *Id.* (citing Petitioner's Letter, "Petition for Imposition of Antidumping Duties: Members of Committee on Pipe and Tube Imports," dated February 28, 1984 (Petition); and *Certain Welded Carbon Steel Pipes and Tubes from Turkey and Thailand (Final)*, Inv. Nos. 701-TA-253 and 731-TA-252, USITC Pub. 1810 (February 1986) (*ITC Final Injury Determination*).

3

include line pipe."[9]  However, Commerce also found that unlike other "orders covering similar merchandise (*e.g.*, from Brazil, Mexico, Korea, and Venezuela)," the *Thailand Order* did "not explicitly exclude pipe that has been dual-stenciled as standard pipe and line pipe."[10]

- Based on the information on the administrative record before it, Commerce concluded that there was "no information from the investigation indicating that pipe which has been dual-stenciled as both standard pipe and line pipe was intended to be excluded from the {*Thailand Order*}."[11]  Therefore, under the scope language itself, Commerce preliminarily found that the *Thailand Order* covered dual-stenciled standard pipe and line pipe, *i.e.*, certified as standard pipe as well as certified as line pipe.[12]

- Relying on the sources listed in 19 CFR 351.225(k)(1), Commerce continued its analysis by looking to the *ITC Fourth Sunset Final Report* which covered seven different orders on similar standard pipe products and noted that the "individual orders were established based on different petitions with different scope language.  Although some of the CWP orders explicitly include exclusions for line pipe and dual-stenciled line pipe, some of the CWP orders do not include such exclusions."[13]

- Commerce explained, therefore, that the ITC's statements about line pipe and dual-stenciled standard pipe and line pipe in general which indicated that CWP orders did not

---

[9] *Id.* at 5 (citing *ITC Final Injury Determination*)
[10] *Id.* at 6-7 (citing *Notice of Antidumping Duty Orders:  Certain Circular Welded Non-Alloy Steel Pipe from Brazil, the Republic of Korea (Korea), Mexico, and Venezuela and Amendment to Final Determination of Sales at Less Than Fair Value:  Certain Welded Non-Alloy Steel Pipe from Korea*, 57 FR 49453 (November 2, 1992)).
[11] *Id.* at 7.
[12] *Id.*
[13] *Id.* (citing Saha Thai Letter, "Saha Thai's Comments on 'Line Pipe' Scope Inquiry Circular Welded Carbon Steel Pipe and Tubes from Thailand," dated August 26, 2019 at Attachment 9:  *Certain Circular Welded Pipe and Tube from Brazil, India, Korea, Mexico, Taiwan, Thailand, and Turkey (Final)*, Inv. Nos. 701-TA-253 and 731-TA-132, 252, 271, 273, 532-534, and 536 (Fourth Review), USITC Pub. 4754 (January 2018) (*ITC Fourth Sunset Final Report*)).

4

cover dual-stenciled pipe "did not apply to all of the CWP orders, as some CWP orders contained express dual-stenciled exclusions and some did not."[14]

- Commerce explained that the CIT's opinion in *Wheatland Tube Co.*,[15] which applied to the CWP from Mexico proceeding, was "inapposite," because that holding was "separate from the order on CWP from Thailand, which has different scope language and its own record that differs from the records covered by the proceedings referenced by Saha Thai. Specifically, the scope of the Mexican CWP order includes the explicit exclusions for line pipe and dual- or triple-stenciled products, which was the crux of the *Wheatland Tube Co.* litigation," while no such language existed in the scope of the *Thailand Order*.[16]

*Final Scope Ruling*

In the Final Scope Ruling issued on June 30, 2020, Commerce once again considered the evidence on the record as well as the additional arguments of the parties made after the preliminary scope ruling in case briefs and rebuttal briefs filed by Wheatland and Saha Thai.[17]

- Commerce again determined that single-stenciled line pipe was not covered by the scope of the *Thailand Order*, but that pipe that is dual-stenciled to "indicate compliance with two different industry specifications, as conforming to industry standards for both

---

[14] *Id.*
[15] *See Wheatland Tube Co. v. United States*, 973 F. Supp. 149, 158 (CIT 1997), *aff'd*, 161 F.3d 1365 (Fed. Cir. 1998) (*Wheatland Tube Co.*).
[16] *Id.*
[17] *See* Wheatland's Letter, "Circular Welded Carbon Steel Pipes and Tubes from Thailand: Case Brief," dated March 23, 2020; *see also* Saha Thai's Letter, "Saha Thai's Scope Inquiry Case Brief Circular Welded Carbon Steel Pipe and Tubes from Thailand," dated March 30, 2020 (Saha Thai's Scope Inquiry Case Brief); Wheatland's Letter, "Circular Welded Carbon Steel Pipes and Tubes from Thailand: Rebuttal Brief," dated April 9, 2020; and Saha Thai's Letter, "Saha Thai's Scope Inquiry Rebuttal Brief Circular Welded Carbon Steel Pipe and Tubes from Thailand," dated April 9, 2020.

standard pipe and line pipe, such as ASTM A53 and API 5L" was covered by the scope of the *Thailand Order*.[18]

- Commerce made this determination based on consideration of the language of the scope of the *Thailand Order*, consideration of the sources under 19 CFR 351.225(k)(1) placed on the record, and the substantial evidence on the administrative record before it. Commerce did not look beyond the record in making its determination.[19]

- Commerce first determined in the Final Scope Ruling that dual-stenciled pipe met the description of subject merchandise included in the scope of the *Thailand Order*, both to the physical description as well as the classification as standard pipe.[20] Standard pipe by definition is pipe that is most commonly produced to American Society for Testing and Materials (ASTM) specifications A-120, A-53, and A-135.[21]

- Next, Commerce considered all 19 CFR 351.225(k)(1) evidence placed on the record by parties, as well as other informative evidence from separate proceedings covering standard pipe.[22]

- Commerce found that neither Commerce's *Final Determination*,[23] nor the *ITC Final Injury Determination*, addressed dual-stenciled pipe, and, therefore, did not signify an intentional omission as contemplated in *Wheatland Tube Co.*[24]

---

[18] *See* Final Scope Ruling at 3.
[19] *Id.* at 12-17.
[20] *Id.* at 12-14: "if a certain product is certified as standard pipe, then it is standard pipe regardless of whether it is also certified as line pipe."
[21] *Id.* at 3; *see also* Remand Order at 30 (citing *Certain Welded Carbon Steel Pipes and Tubes from Thailand and Venezuela*, Inv. Nos. 701-TA-242 and 731-TA-252 and 253 (Preliminary), USITC Pub. 1680 (April 1985) (ITC Preliminary Injury Determination) at 7-8).
[22] *See* Final Scope Ruling at 12-17.
[23] *See Antidumping: Circular Welded Carbon Steel Pipes and Tubes from Thailand; Final Determination of Sales at Less Than Fair Value*, 51 FR 3384 (January 27, 1986).
[24] *See* Final Scope Ruling at 14.

6

- With respect to the arguments that some CWP orders had language excluding dual-stenciled pipe and some did not, Commerce found that "such differences merely suggest that some products may have been intended differently under the different orders."[25] Commerce also reviewed the *ITC Third Sunset Final Report*[26] and *ITC Fourth Sunset Final Report*, which had been placed on the record by Saha Thai. Saha Thai pointed out that in both of the ITC's sunset reviews, the ITC stated that "dual-stenciled pipe, which enters as line pipe under a different subheading of the {HTSUS} for U.S. customs purposes, is not within the scope of the orders."[27] Commerce, however, found that it was "clear that the ITC was not addressing the language of each individual order, including the scope text which differed between those orders, but instead was providing a generalized statement applicable to the majority of the orders, which contained explicit exclusions for dual-stenciled pipe."[28] As it concluded in analyzing the similar language from the *ITC Fourth Sunset Final Report*, Commerce determined that this reference, as well to "orders" in the plural, was not intended to cover all of the CWP orders.[29] Commerce determined, instead, that the only reasonable conclusion was that the various references to the ITC language were meant to summarize the status of dual-stenciled pipe

---

[25] *Id.* at 15.
[26] *See Circular Welded Pipe and Tube from Brazil, India, Korea, Mexico, Taiwan, Thailand, and Turkey*, Investigation Nos. 701-TA-253 and 731-TA-132, 252, 271, 273, 532-534 and 536 (Third Review), USITC Publication 4333 (June 2012) (*ITC Third Sunset Final Report*). Saha Thai raised arguments concerning language in the Third Sunset Final Report for Commerce to consider in its scope inquiry case brief. *See* Saha Thai's Scope Inquiry Case Brief at 12-13.
[27] *Id.* (citing *ITC Fourth Sunset Final Report* at 6-7; and *ITC Third Sunset Final Report* at 8).
[28] *See* Final Scope Ruling at 15 (citing *ITC Fourth Sunset Final Report*).
[29] *Id.* at 16 (citing *ITC Third Sunset Final Report*).

7

under the majority of the orders, but were not applicable to other specific orders, including the *Thailand Order*, without such exclusion.[30]

- Saha Thai also argued that the specific exclusionary language in some CWP orders as well as the CIT's holding in *Wheatland Tube Co.* should preclude Commerce from finding that dual-stenciled pipe is covered by the *Thailand Order*. Commerce determined that the proceedings referenced by Saha Thai and those at issue in *Wheatland Tube Co*, had importantly different scope language and records, with an explicit exclusion for dual-stenciled pipe, which was the main factual issue in *Wheatland Tube Co.*[31]

- Given that dual-stenciled pipe is certified as standard pipe under ASTM specifications and meets the other physical description of the scope language and given that Commerce found that other record information did not show an intention to omit dual-stenciled pipe from the scope of the *Thailand Order*, Commerce determined in the Final Scope Ruling that dual-stenciled pipe was included in the scope of the *Thailand Order*.[32]

*Remand Order*

Saha Thai challenged the Final Scope Ruling before the Court, and on October 6, 2021, the Court issued its holding. In summary, the Court held in the *Remand Order* that Commerce's Final Scope Ruling unlawfully expanded the scope by ruling that dual-stenciled pipe was covered by the scope of the *Thailand Order* on the following bases:

- When the petitioners withdrew the petition covering line pipe, it concerned products classified under the Tariff Schedule of the United States Annotated (TSUSA) 610.3208

---

[30] *Id.* at 16. As the ITC noted in the *ITC Third Sunset Final Report*, "Because of differences in wall thicknesses and excluded products among the circular welded pipe scope definitions, the domestic like products defined by the Commission in the various underlying original investigations differed from one another in some respects." *See ITC Third Sunset Final Report* at 9.
[31] *See* Final Scope Ruling at 16.
[32] *Id.* at 17.

8

and 610.3209 and those "are the numbers under which line pipe, dual-stenciled or otherwise, would have been imported in 1985." The Court cited to the TSUSA in 1985 and statements on the oral argument transcript for the "Government and Wheatland's admission that line pipe and dual-stenciled pipe would have been imported under those TSUSA classifications in 1985."[33]

- The Court held that the TSUSA numbers appearing in Commerce's *Final Determination* did not list the TSUSA numbers which would have covered dual-stenciled line pipes in 1986. The Court said that the ITC report released in April 1985 that listed these TSUSA numbers in the first place addressed "material injury caused to the U.S. standard pipe industry by the importation of standard pipe from Thailand, not by line or dual-stenciled pipe."[34]

- The Court pointed out that "at no point did the ITC make a material injury determination regarding the … dual-stenciled pipe imported from Thailand."[35]

- The Court also pointed out that the ITC "did not mention dual or multi-stenciled pipe imported as line pipe" in its injury determination.[36]

- The Court referenced the fact that in the *ITC First Sunset Final Report*, in an analysis covering safeguard duties, the ITC noted that "dual-stenciled pipe imported as line pipe" was "excluded from antidumping orders were nonetheless subject to President Clinton's 'safeguard duties' covering line pipe."[37]

---

[33] *See Remand Order* at 5, 15, 32.
[34] *Id.* at 7, 32 ("Once the initial petitioners withdrew all pipes that were importable under 610.3208 and 3209 from consideration by the ITC and Commerce, those pipes were not included in either the resulting injury investigation conducted by the ITC or the antidumping order issued by Commerce").
[35] *Id.*
[36] *Id.*
[37] *Id.* at 11 (citing *Certain Pipe and Tube from Argentina, Brazil, Canada, India, Korea, Mexico, Singapore, Taiwan, Thailand, Turkey, and Venezuela, Inv. Nos. 701-TA-253, 731-TA-132, 252, 271, 273, 276, 277, 296, 409,*

- The Court continued that the *ITC Second Sunset Final Report*, likewise, referenced the fact that the safeguard duties covering line pipe included dual-stenciled pipe, and that dual-stenciled pipe would likely be sold at a price premium over single-stenciled pipe due to additional steel requirements.[38]

- Citing the *ITC Third Sunset Final Report*, the Court found that the ITC did not specifically provide a caveat when it stated that the scope of the seven orders under review did not include dual-stenciled pipe when it stated: "Producers primarily make circular welded pipe to ASTM specifications A53, A135, and A795.40. As these standards often require engineering characteristics that overlap with other specifications, a pipe may be dual-stenciled, *i.e.*, stamped to indicate compliance with two different specifications, such as ASTM53 and API5L. This dual-stenciled pipe, which for U.S. customs purposes enters as line pipe under a different tariff subheading, is not within the scope of the orders."[39]

- Citing the *ITC Fourth Sunset Final Report*, the Court found that the ITC reiterated the treatment of dual-stenciled pipe in the *ITC Third Sunset Final Report* as it contained the same language used.[40]

- The Court explained that at the hearing it required all parties to "write a letter identifying for the Court 'in the record of this matter where there was an instance or

---

*410, 532–534, 536, and 537 (First Sunset Review)*, USITC Pub. 3316 at 6 (July 2000) (*ITC First Sunset Final Report*).
[38] *Id.* at 11-12 (citing *Certain Pipe and Tube from Argentina, Brazil, India, Korea, Mexico, Taiwan, Thailand, and Turkey, Inv. Nos. 701-TA-253, 731-TA-132, 252, 271, 273, 409, 410, 532–534, and 536 (Second Sunset Review)*, USITC Pub. 3867 at 4–5 (July 2006) (*ITC Second Sunset Final Report*).
[39] *Id.* at 12.
[40] *Id.* at 12-13.

10

- more than one instance of … the Government' referring 'explicitly to dual stenciled pipe as standard pipe.'"[41]

- The Court stated that the "Government and Wheatland have consistently argued" that language of CWP orders covering other countries "are not probative of the {Thailand} order's scope,"[42] but in responding to the Court's demand for explicit references to dual-stenciled pipe as standard pipe, both referenced other orders.

- The Court held that the scope language was "ambiguous without the context of the (k)(1) materials."[43]

- The Court stated that Commerce in its arguments rejected "Saha's contention that there is probative value in antidumping orders, ITC determinations and Commerce's determinations that cover the same products are from different countries," and believed that the "order's plain language unambiguously encompasses dual-stenciled pipe."[44] Nonetheless, Commerce argued that the (k)(1) sources still support its decision.

- The CIT held that it was relevant that Thailand "did not produce dual-stenciled pipe at the time of the original investigation and order."[45]

- The CIT held that the "ITC made no injury determination as to dual-stenciled" standard pipe and line pipe from Thailand, and, "therefore, antidumping duties cannot be imposed on those types of pipes when imported from Thailand."[46]

---

[41] *Id.* at 16.
[42] *Id.* at 17 (citing U.S. 56.2 Motion Response Brief at 18-19).
[43] *Id.* at 21.
[44] *Id.* at 24.
[45] *Id.* at 25.
[46] *Id.*

11

- The CIT held that unlike the facts in *Wheatland Tube Co.*, the scope "neither expressly included" nor "expressly excluded" the merchandise at issue, so therefore that opinion is not applicable.[47]

- The Court pointed out that the original scope also included TSUSA numbers "that do not include, as all the parties agreed, the item numbers under which dual-stenciled pipe would have been imported in 1986."[48] The Court described the "language about size and diameter" of the scope as only "one-third" of the scope, and equivocated the TSUSA classifications with the physical descriptions in importance.[49] Still, the Court determined that because the scope said it covered pipe "commonly referred to" in the industry as "standard pipe," it was also important to determine if dual-stenciled pipe was "standard pipe," and on that the scope was "silent," thereby making it ambiguous.[50]

- The Court held that Commerce "cannot impose a duty on a fiction. API stenciled pipes, *i.e.*, line and dual-stenciled pipes were omitted by the decision of the petitioners themselves from the ITC's original injury investigation" and that "it is well settled that Commerce cannot 'assess antidumping duties on products intentionally omitted from the ITC's injury investigation. *Wheatland Tube Co.*, 161 F.3d at 1371. Allowing Commerce to assess such duties without an injury determination 'would itself frustrate the purpose of the antidumping laws.' *Id.*"[51]

---

[47] *Id.* at 25, n. 5.
[48] *Id*. at 27.
[49] *Id.*
[50] *Id.* at 28-29.
[51] *Id*. at 32-33.

- The Court held that the "lack of" an injury determination by the ITC explicitly referencing dual-stenciled pipe was "fatal to Commerce's case."[52]

- Citing the *ITC Third Sunset Final Report* and the *ITC Fourth Sunset Final Report*, the Court notes that in speaking generally about orders from countries that had exclusions for dual-stenciled standard pipe and line pipe and orders that did not include such exclusions, that because the statements by the ITC that "dual-stenciled pipe, which enters as line pipe" was not within the scope of the orders were "unqualified" and gave "no indication that the scope language does not apply to the {*Thailand Order*}," the Court found Commerce's arguments that the language that the language was general to be "not persuasive."[53]

- Finally, the Court held that because Commerce could not find "a single instance of dual-stenciled pipe being referenced as 'standard pipe" through the entire history of the *Thailand Order* and the sunset reviews of that order," that fact was relevant to the issue.[54]

## IV.   ANALYSIS

In compliance with the *Remand Order*, Commerce has reconsidered the sources listed in 19 CFR 351.225(k)(1) that were on the administrative record before Commerce, as well as the additional information considered by the Court, and in light of the Court's holding, on remand we must determine that dual-stenciled pipe, which is certified as and can be used as either standard pipe or line pipe, is not covered by the *Thailand Order*.  Respectfully, we are conducting this analysis under protest.

---

[52] *Id.* at 33.
[53] *See Remand Order* at 37.
[54] *Id.* at 39.

*Conclusion*

The Court held that Commerce's Final Scope Ruling was unlawful and unsupported by substantial evidence on the record.[55] Therefore the *Remand Order* held that Commerce should reconsider the sources under 19 CFR 351.225(k)(1) in compliance with the Court's reasoning and analysis, and we have done so. We have determined that dual-stenciled standard pipe and line pipe could not be covered by the scope of the *Thailand Order*, under the analysis, reasoning, and conclusions reached by the Court in the *Remand Order*. We have issued these remand results of redetermination under respectful protest. Should the Court affirm our final results of redetermination, we intend to issue instructions to U.S. Customs and Border Protection accordingly.

## V.   COMMENTS ON DRAFT RESULTS OF REDETERMINATION

On December 10, 2021, we released our Draft Results of Redetermination to interested parties.[56] On December 17, 2021, we received comments from Saha Thai [57] and Wheatland.[58] We respond to these comments below.

*Saha Thai's Comments*

- The Draft Results of Redetermination fully complies with the Court's *Remand Order* and is in line with applicable law and the evidentiary record.[59]

- Commerce has followed the Court's instructions and concluded that dual-stenciled standard pipe and line pipe is not covered by the *Thailand Order*. Saha Thai supports a

---

[55] *Remand Order* at 40.
[56] *See* Draft Results of Redetermination Pursuant to Court Remand, *Saha Thai Steel Pipe Public Company, Ltd., v. United States*, dated December 10, 2021 (Draft Results of Redetermination).
[57] *See* Saha Thai's Letter, "Saha Thai's Comments Concerning the Department's Draft Remand Redetermination Pursuant to the Court Remand in Slip Op. 21-135. Court No.1:20-cv-133 Circular Welded Carbon Steel Pipe and Tubes from Thailand," dated December 17, 2021 (Saha Thai's Draft Redetermination Comments).
[58] *See* Wheatland's Letter, "Circular Welded Carbon Steel Pipes and Tubes:  Comments on Draft Remand Redetermination," dated December 17, 2021 (Wheatland's Draft Redetermination Comments).
[59] *See* Saha Thai's Draft Redetermination Comments at 2.

14

   final results of redetermination that, if affirmed by the Court, will set aside Commerce's

   Final Scope Ruling.[60]

- Saha Thai strongly supports the adoption of a final results of redetermination in the same

   terms as Commerce's Draft Results of Redetermination.[61]

*Commerce's Position*

We agree with Saha Thai's argument that these Results of Redetermination are in full compliance with the Court's *Remand Order*.

*Wheatland's Comments*

*Wheatland Comment 1: The CIT's Opinion and Remand Order and Commerce's Draft Results of Redetermination are Not Supported by Evidence on the Record But Instead Impermissibly Rely on Evidence Outside the Record*

- In its opinion, the CIT substituted its own judgment before that of Commerce and

   conducted a *de novo* review of its own, expanding the record of the review by relying on

   sources outside of the record before Commerce in the underlying scope inquiry and

   improperly excising relevant evidence from the record when it directly contradicted the

   CIT's own findings of facts.[62]

- The CIT's judicial review is limited to whether Commerce's determination is supported

   by substantial evidence on the record and otherwise in accordance with law. Nonetheless,

   the CIT repeatedly looked outside the administrative record, citing to the *ITC First Sunset

   Final Report*, the *ITC Second Sunset Final Report*, and *Proclamation 7274*. None of

   these documents were placed on the administrative record before Commerce. Therefore,

   it is impossible that these sources could have been considered "record evidence" to either

---

[60] *Id.*
[61] *Id.*
[62] *See* Wheatland's Draft Redetermination Comments at 2.

support or detract from Commerce's scope determination. The CIT acted *sua sponte* to develop its own factual record and conducted its own *de novo* scope inquiry. Such action far exceeds the limits of judicial review of Commerce's determinations provided by the statute, and the CIT's reliance on sources outside the record is misguided.[63]

- The U.S. Supreme Court has recognized that "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court," and the CIT has applied this principle in its judicial review of antidumping determinations conducted by Commerce.[64] Similarly, the Federal Circuit has also cautioned against expansion of the record by the reviewing court to include information that was not before the administrative agency.[65]

- Because Commerce's Draft Results of Redetermination impermissibly relied on evidence that was not part of the record of the underlying scope inquiry, the Draft Results of Redetermination is not supported by substantial evidence on the record.[66]

*Commerce's Position*

Commerce finds that dual-stenciled standard pipe and line pipe is not included in the scope of the *Thailand Order*.

*Wheatland Comment 2:  Commerce's Draft Results of Redetermination Ignores Relevant Evidence on the Record*

- The Draft Remand Redetermination ignores evidence on the record that shows examples from other country proceedings where the scopes contain language demonstrating dual-

---

[63] *Id*. at 3.
[64] *Id*. at 4 (citing *Sao Ta Foods Joint Stock Co. v. United States*, 475 F. Supp. 3d 1283, 1287 (CIT 2020)).
[65] *Id*.
[66] *Id*.

16

stenciled pipe is referred to as standard pipe,[67] *i.e.*, evidence that is directly relevant to the key question of whether dual-stenciled pipe is covered by the scope of the *Thailand Order*.[68]

- The CIT has failed to recognize Commerce's established practice with respect to the interpretation of 19 CFR 351.225(k)(1), stating that Commerce could not rely on this evidence because it did not pertain specifically to the *Thailand Order*. However, as Commerce correctly has recognized, while its regulation does not require it to review or consider petitions or orders involving other countries, Commerce nonetheless may do so when such information is placed on the administrative record – as it was in this scope inquiry. This longstanding practice has now been codified in Commerce's updated scope regulations.[69]

*Commerce's Position*

Commerce finds that dual-stenciled standard pipe and line pipe is not included in the scope of the *Thailand Order*.

*Wheatland Comment 3: Commerce's Draft Results of Redetermination is Based on a Fundamental Misunderstanding of the ITC's Final Determination in the Original Investigation*

- The CIT misapprehended the ITC's final injury determination in the original investigation,[70] finding that it could not have made an injury finding with respect to dual-stenciled pipe because Thai producers were not manufacturing dual-stenciled pipe at the time of the original investigation. The CIT failed to appreciate that dual-stenciled pipe

---

[67] *See* ITC Fourth Final Sunset Report at I-12-I-13.
[68] *Id*. at 4-5 (citing *Remand Order* at 38).
[69] *Id*. at 5.
[70] *See* ITC Final Injury Determination.

17

    has the same physical characteristics as standard pipe that the ITC found to be injurious to the domestic industry in the original investigation.[71]

- Moreover, the Federal Circuit has held that there is no requirement that the ITC reference a specific product in its injury analysis to have it covered by the scope of an order if that product is ultimately determined to be covered by the physical description of the general merchandise covered by the scope of an order. Not mentioning specific product specifications does not mean that those particular types of product are not covered by the scope of an order. In fact, there are many types of pipe produced to specifications not specifically discussed by the ITC that, nonetheless, would be covered by the scope.[72]

- Furthermore, it would make no difference if Thailand did not produce or export these particular types of product during the ITC's original investigation; they would still be covered by the scope of the final order if Thailand began producing and exporting them to the United States today.[73]

- It is the purview of Commerce – not the ITC – to determine whether merchandise that shares the physical characteristics of subject merchandise is included with the scope of the order. Indeed, the CIT's requirement that the ITC specifically mention every product that may be within the scope of an order in its injury determination directly conflicts with the provision of the statute that allows Commerce to make factual determinations about later-developed merchandise to prevent circumvention.[74]

---

[71] *Id*. at 6.
[72] *Id.*
[73] *Id*. at 6-7 (citing *Shenyang Yuanda*, 961 F. Supp. 2d at 1299).
[74] *Id*. at 7.

- The Draft Results of Redetermination relies on the CIT's flawed understanding of the ITC's final determination and is not in accordance with law.[75]

*Commerce's Response*

Commerce finds that dual-stenciled standard pipe and line pipe is not included in the scope of the *Thailand Order*.

*Wheatland Comment 4:  Commerce's Draft Results of Redetermination Fails to Properly Account for All of the ITC's Statements in the Third and Fourth ITC Sunset Final Reports*

- As Commerce notes, there is no evidence on the record with respect to the intentions of the ITC to specifically interpret the scope of all of the different orders at issue in the *ITC Third Sunset Final Report* and the *ITC Fourth Sunset Final Report* as covering the exact same universe of merchandise, and in fact, any finding of such an intention would seem contradicted by the fact that the scopes of the orders under review varied in terms of product exclusions [76]  Nonetheless, Commerce, in the Draft Results of Redetermination, relies on these *Reports* to support its finding that dual-stenciled pipe is not covered by the scope of the *Thailand Order*.  This conclusion is contradicted by Commerce's own well-reasoned analysis in the Draft Results of Redetermination.[77]

*Commerce's Response*

Commerce finds that dual-stenciled standard pipe and line pipe is not included in the scope of the *Thailand Order*.

## VI.    FINAL RESULTS OF REDETERMINATION

As a result of this redetermination, we have determined, under protest, that dual-stenciled standard pipe and line pipe is outside the scope of the *Thailand Order*.  Should the Court sustain

---

[75] *Id*.
[76] *Id.* at 7-8.
[77] *Id*.

these final results of redetermination, we will issue appropriate instructions to U.S. Customs and

Border Protection accordingly.

4/22/2022

X 

Signed by: LISA WANG

_____

Lisa W. Wang
Assistant Secretary
 for Enforcement and Compliance