Slip Op. No. 22-99

## UNITED STATES COURT OF INTERNATIONAL TRADE

SAHA THAI STEEL PIPE PUBLIC
COMPANY, LTD.,

                *Plaintiff,*

v.

UNITED STATES,

                *Defendant,*

    and

WHEATLAND TUBE COMPANY,

                *Defendant-Intervenor.*

Before: Stephen Alexander Vaden,
Judge

Court No. 1:20-cv-00133

## <u>OPINION</u>

[Sustaining Commerce's remand redetermination results].

Dated: August 25, 2022

*Daniel L. Porter*, Curtis, Mallet-Prevost, Colt & Mosle LLP, of Washington, DC, for Plaintiff. With him on the brief was *James C. Beaty*.

*Claudia Burke* and *In K. Cho*, Trial Attorneys, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for Defendant United States. With them on the brief were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Jeanne E. Davidson*, Director, Commercial Litigation Branch, *Franklin E. White, Jr.*, Assistant Director, Commercial Litigation Branch, and *JonZachary Forbes*, Office of Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce.

*Luke A. Meisner*, Schagrin Associates, of Washington, DC, for Defendant-Intervenor. With him on the brief were *Roger B. Schagrin* and *Kelsey M. Rule*.

**Vaden, Judge:** Before the Court is the U.S. Department of Commerce's (Commerce) remand redetermination in the scope inquiry examining the 1986 antidumping duty order (Thailand Order). The Thailand Order concerns circular welded carbon steel pipes and tubes (CWP) imported from Thailand (Case No. A-549-502), filed pursuant to the Court's remand order in *Saha Thai Steel Pipe Pub. Co., Ltd. v. United States*, 547 F. Supp. 3d 1278 (CIT 2021) (*Saha Thai I*). *See Final Results of Redetermination Pursuant to Ct. Remand*, Oct. 16, 2021, ECF No. 58 (Remand Results). For the following reasons, the Court sustains Commerce's remand redetermination.

## BACKGROUND

The Court presumes familiarity with the facts of this case as set out in its previous opinion ordering a remand of this scope inquiry to Commerce and now recounts those facts relevant to the review of the Remand Results.

The order underlying the scope inquiry in this case traces its roots to 1985, when the domestic industry filed a petition requesting that Commerce examine the injury caused by steel pipe imports from Thailand. J.A. at 1,090, ECF No. 42. In the initial investigation leading to those final determinations, petitioners requested the imposition of antidumping duties on standard and line pipes but later submitted a letter withdrawing their petition "insofar as [it] concern[ed] line pipe, TSUS numbers 610.3208 and 3209." *Saha Thai I*, 547 F. Supp. 3d at 1282; *Letter Dated March 14, 1985, from Petitioner Regarding Partial Withdrawal of Petition*, J.A. at 1,781, ECF

No. 42.  The original petitioners, which included Wheatland Tube, acknowledged that no line pipe — mono or dual-stenciled — was being produced in Thailand at the time. J.A. at 1,781; *see also* Tr. of Oral Argument (First Tr.) 6:2–7:3 (July 15, 2021), ECF No. 53.  Thus, the petitioners had no information to submit in response to Commerce's questions regarding Thai line pipe's potential to harm domestic manufacturing.  *See AD & CVD Investigations of Pipes and Tubes from Thailand & Venezuela*, J.A. at 1,753 (requesting that petitioners provide "[d]ocumentation which demonstrates that line pipe is manufactured in Thailand" and "[d]ocumentation which supports the allegation that line pipe from Thailand is being sold at less than fair value.").

In January 1986, Commerce issued a final determination that standard pipe from Thailand was being, or was likely to be, sold in the United States at less than fair value.  *Antidumping: Circular Welded Carbon Steel Pipes and Tubes from Thailand; Final Determination of Sales at Less Than Fair Value*, 51 Fed. Reg. 3,384 (Jan. 27, 1986), J.A. at 1,216.  The International Trade Commission (ITC) released its final material injury determination and report the next month.  *See Certain Welded Carbon Steel Pipes and Tubes from Turkey and Thailand*, Inv. Nos. 701-TA-253 and 731-TA-252, USITC Pub. 1810 (Feb. 1986) (ITC Final Determination), J.A. at 1,221.  In its report, the ITC distinguished the injury caused by standard pipe from Thailand from the injury caused by standard and line pipe from Turkey, making no material injury determination for line pipe, dual-stenciled or otherwise, from Thailand.  *Id.*

The contents and scope described by these final determinations are discussed at length in *Saha Thai I*.  In this subsequent adjudication, it suffices to say that dual-stenciled line pipe was never explicitly included in the scope language of either the antidumping determination or material injury determination.  *Saha Thai I*, 547 F. Supp. 3d at 1282–84.   After Defendant-Intervenor Wheatland Tube and other petitioners requested a determination of whether Saha Thai's sales of dual-stenciled pipe constituted a "minor alteration" of the original product, Commerce instead self-initiated a scope inquiry.  *Antidumping Duty Order on Circular Welded Carbon Steel Pipes and Tubes from Thailand: Self Initiation of Scope Inquiry on Line Pipe and Dual-Stenciled Standard Line Pipe*, J.A. at 1,800; *see* 19 U.S.C. § 1677j(c) (providing that merchandise "altered in form or appearance in minor respects" should still be considered within the scope of the relevant antidumping order).   It ultimately issued a Final Scope Ruling finding that dual-stenciled line pipe is within the scope of the Thailand Order on June 30, 2020.  *See* Final Scope Ruling, J.A. at 2,041.  On July 17, 2020, Saha Thai sued Commerce, challenging the scope decision.  ECF No. 6.

The Court issued a decision in *Saha Thai I* on October 6, 2021.  *Saha Thai I*, 547 F. Supp. 3d 1278.   In that opinion, the Court found that "Commerce's determination that dual-stenciled pipe is covered by the Thailand Order [wa]s not supported by substantial evidence . . . [and] that Commerce's Final Scope Ruling constitute[d] an unlawful expansion of the scope of the underlying order."  *Id.*  The Court's decision was based on the undisputed facts that (1) Wheatland Tube explicitly

withdrew line pipe from Commerce's consideration because Thailand did not manufacture line or dual-stenciled pipe in 1985–86 when the Thailand Order was finalized and (2) the ITC made no material injury determination for line pipe from Thailand. *Id.* at 1299. As a result, the Court remanded the Final Scope Ruling back to Commerce, instructing Commerce to render a redetermination consistent with the Court's opinion. *Id.* at 1281.

Commerce has now undertaken a redetermination following the instructions provided by the Court and brought forward a renewed statement of its position. To assist the parties, the Court will briefly summarize both the process undertaken by Commerce and the arguments it has articulated. Commerce filed its Remand Results on January 4, 2022. ECF No. 58. Commerce reconsidered record sources "in light of the reasoning, analysis, and conclusions of the Court," and determined, under respectful protest,[1] that "dual-stenciled standard pipe and line pipe are **not** covered by the scope of the *Thailand Order*." Remand Results at 1–2, ECF No. 58 (emphasis added). In the original Remand Results, Commerce raised four concerns with the decision it felt it must return based on the Court's opinion. *Id.* at 13–20. First, Commerce takes issue with the Court's reliance on what Commerce asserts are "[e]xtra-[r]ecord [s]ources." *Id.* at 14–15. The disputed sources are the *ITC First Sunset Final Report* (*First Sunset Review*); the *ITC Second Sunset Final Report*

---

[1] *See Viraj Group, Ltd. v. United States*, 343 F.3d 1371, 1376–77 (Fed. Cir. 2003) (holding that, when Commerce takes a position "under protest," it preserves its right to appeal).

(*Second Sunset Review*); and an executive order, *Presidential Proclamation 7274*, discussed in those reports. *Id.* at 14–15. Second, Commerce claims that the Court misunderstood Commerce's interpretation of 19 C.F.R. § 351.225(k)(1) and the extent to which Commerce "may (and frequently does)" find the text and materials of other petitions or orders informative in its scope analysis, as long as those materials are placed on the record. *Id.* at 16. Third, Commerce believes that the Court is mistaken about the ITC's findings. *Id.* at 16. It adduces this conclusion by noting, once again, that the Commission did make an injury determination for standard pipe, that dual-stenciled pipe is certified as standard pipe, and that Commerce understands Federal Circuit precedent to impose no requirement that the ITC analyze a particular product for that product to be covered by the scope of the order. *Id.* at 16–18. Fourth and finally, Commerce argues that the Court failed to give proper weight to some of the limiting context surrounding statements in the *ITC Third Sunset Final Report* (*Third Sunset Review*) and *ITC Fourth Sunset Final Report* (*Fourth Sunset Review*). *Id.* at 18–20. Commerce later amended the Remand Results to exclude the "extraneous legal argument[s]" detailing those four concerns but left the scope decision in the Remand Results unchanged. Amended Remand Results, ECF No. 69.

The parties disagree stridently regarding Commerce's Remand Results. On February 3, 2022, Saha Thai filed comments encouraging the Court to sustain the new outcome. Pl.'s Comments in Support of Remand Redetermination Results, ECF No. 61. On February 18, 2022, the Government invited the Court to sustain the

Remand Results because the Results complied with the Court's remand order, fulfilling Commerce's legal obligations in every respect.  Def.'s Resp. to Comments on Remand Redetermination, ECF No. 63.  Wheatland Tube, however, objected to the logic and outcome of the Remand Results.  *See* Def.-Int.'s Comments on Remand Redetermination (Def.-Int.'s Comments), ECF No. 62.  It cited four reasons that largely mirror the concerns expressed by Commerce:  (1) the Remand Results are not supported by evidence on the record, instead impermissibly relying on information outside the record; (2) the Remand Results ignore relevant information on the record; (3) the Remand Results are based on a misunderstanding of the ITC's final determination in the original investigation; and (4) the Remand Results fail to properly account for all of the ITC's statements in the *Third* and *Fourth Sunset Reviews*.  *See id.*  For those reasons, Wheatland Tube again asks this Court to remand the scope inquiry for Commerce to reconsider its determination and find that dual-stenciled pipe is covered by the scope of the order.  *Id.* at 9.

The Court held oral argument on May 17, 2022.  ECF No. 72.  At oral argument, both Commerce and Wheatland Tube insisted that, regardless of whether a party failed to object to the mention of extra-record evidence before the Court, Commerce and the Court would still be barred from considering such evidence.  *See* Transcript of Second Oral Argument (Second Tr.) 48:22–24, 49:20–21, ECF No. 73 (Commerce counsel stating that "just because you talk about something in a proceeding doesn't mean that . . . the actual document is on the record."  Commerce

counsel elaborated, "I don't' [*sic*] think [Wheatland Tube] can waive the question of what's on the record."); Second Tr. 43:15–16 (counsel for Wheatland Tube arguing that "just because we failed at that time to object does not expand the universe of the record"). Ultimately, Commerce asserted that the discussion of what was or was not before the Court on the record initially was largely academic, as the issue was "overtaken by events" and Commerce's subsequent Remand Results. Second Tr. 74:18.

## JURISDICTION AND STANDARD OF REVIEW

As in *Saha Thai I*, the Court has jurisdiction over Plaintiff's challenge to the Scope Ruling under 19 U.S.C. § 1516a(a)(2)(B)(vi) and 28 U.S.C. § 1581(c), which grant the Court authority to review actions contesting scope determinations described in an antidumping order. The Court will sustain Commerce's remand redetermination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). "[T]he question is not whether the Court would have reached the same decision on the same record[;] rather, it is whether the administrative record as a whole permits Commerce's conclusion." *See New Am. Keg v. United States*, No. 20-00008, 2021 WL 1206153, at *6 (CIT Mar. 23, 2021). Additionally, "[t]he results of a redetermination pursuant to court remand are also reviewed 'for compliance with the court's remand order.'" *Xinjiamei Furniture (Zhangzhou) Co. v. United States*, 968 F. Supp. 2d 1255, 1259

(CIT 2014) (quoting *Nakornthai Mill Pub. Co. v. United States*, 587 F. Supp. 2d 1303, 1306 (CIT 2008)).

## DISCUSSION

### I.      Summary

The facts support Commerce's Remand Results.   No line pipe was manufactured in Thailand when Commerce undertook its initial investigation almost forty years ago, and the ITC's report made no harm finding for line or dual-stenciled pipe from Thailand.   Moreover, petitioners explicitly withdrew their petition as it pertained to line pipe and have admitted that their withdrawal letter specifically covered the categories under which *all* dual-stenciled line pipe would have been imported.   First Tr. 7:8–22.   These facts lead to the conclusion that the scope of the Thailand Order cannot now be read to include dual-stenciled line pipe.   Despite these facts, Commerce (in its respectful protest) and Wheatland Tube argue that the procedural record in other cases involving other countries overcomes the procedural record in this case; they object that Commerce's new results both rely on evidence outside the record and ignore evidence on the record.   Remand Results at 14–16, ECF No. 58; Def.-Int.'s Comments at 2, 4, ECF No. 62.   The record does not support these contentions, and the objections to Commerce's and the Court's evaluation of sources are unavailing.

The following facts are not in dispute.   First, the scope inquiry at issue began as a circumvention ruling request in which Wheatland Tube alleged that Saha Thai

"was circumventing the Thailand Order through minor alterations to Saha's merchandise." *Saha Thai I*, 547 F. Supp. 3d at 1287; *Circumvention Ruling Request*, J.A. at 1,807.  Second, instead of undertaking the circumvention process, Commerce self-initiated a scope inquiry.  *Antidumping Duty Order on Circular Welded Carbon Steel Pipes and Tubes from Thailand: Self Initiation of Scope Inquiry on Line Pipe and Dual-Stenciled Standard Line Pipe* (Nov. 22, 2019), J.A. at 1,800.  Third, in that scope ruling, Commerce found that the scope of the Thailand Order included a product that was explicitly withdrawn from consideration in 1985 without citing to any change in the record of the Thailand Order but by instead citing to orders governing the same product in other countries.  *See generally Antidumping Duty Order on Circular Welded Carbon Steel Pipes and Tubes from Thailand:  Final Scope Ruling on Line Pipe and Dual-Stenciled Standard and Line Pipe* (June 30, 2020), J.A. at 2,041.

The record simply does not support Commerce's original scope results.  "[W]hile Commerce has 'substantial freedom to interpret and clarify its antidumping [and countervailing duty] orders,' it may not do so in a way that changes them." *Sunpreme Inc. v. United States*, 946 F.3d 1300, 1309 (Fed. Cir. 2020) (internal citations omitted) (alteration in original).  However, the record does support Commerce's new results.  The concerns raised by Commerce and Wheatland Tube are ultimately unpersuasive.  Commerce's new results are sustained.

## II.    Forfeiture

Wheatland Tube objects to three documents the Court and Commerce consulted in the Remand Order and Remand Results: the *First Sunset Review*, the *Second Sunset Review*, and *Presidential Proclamation 7274*. Def.-Int.'s Comments at 2–4, ECF No. 62. Wheatland Tube's objections, however, are forfeited. Saha Thai referenced the documents in question in both its briefing before the agency and the Court, yet Wheatland Tube and Commerce failed to object during any stage of the prior proceedings. They have therefore forfeited their ability to contest Saha Thai's citation to those documents.

Like the Supreme Court and the Federal Circuit, this Court distinguishes waiver and forfeiture. Forfeiture is "the failure to make the timely assertion of a right," whereas waiver is the "intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)); *In re Google Tech. Holdings*, 980 F.3d 858, 862 (Fed. Cir. 2020). When a case is appealed from a previous proceeding, each party has a responsibility to assert all its relevant arguments; if the case returns to an appellate court after remand, any issues not raised previously are foreclosed, as demonstrated in *Vivint v. Alarm.com Inc.*, 856 F. App'x 300 (Fed. Cir. 2021). In *Vivint*, a home security company appealed initial unpatentability determinations from the Patent Board. *Id.* at 302. The Federal Circuit remanded the determination on various grounds; and the Board rendered a new decision, which Vivint likewise appealed. *Id.*

Six weeks after Vivint filed its second appeal, the Federal Circuit issued a decision in another case, finding that the appointment of certain Administrative Patent Judges was unconstitutional.  *Id.* at 302–03.  Vivint then moved to vacate the Board's remand decision, arguing that the judges who decided the remand results had been unconstitutionally appointed.  *Id.*  However, the Federal Circuit "found that Vivint had forfeited its constitutional argument by failing to raise an Appointments Clause challenge in its first appeal."  *Id.* at 303.  The court explained that "it was Vivint's obligation to raise its Appointments Clause challenge before the first court who could have provided it relief" and that "[o]nce its first appeal was decided, all matters which could have been raised then—but were not—were foreclosed.  The remand after that first appeal was on one very narrow ground, and that ground is all that remains to be litigated in this subsequent appeal."  *Id.* at 304; *accord Customedia Techs., LLC v. Dish Network Corp.*, 941 F.3d 1174 (Fed. Cir. 2019); *NEXTEEL Co., Ltd. v. United States*, 461 F. Supp. 3d 1336, 1343–46 (CIT 2020) (holding arguments that could have been raised during proceedings in front of Commerce, but were not, waived and refusing to consider them on appeal); *see also United States v. Great Am. Ins. Co.*, 738 F.3d 1320, 1328, 1336 (Fed. Cir. 2013) (affirming a CIT decision that denied a party's post-judgment attempt to add an argument not raised in initial briefing because the argument was forfeited).  Failing to raise an argument in a previous proceeding thus forfeits the argument after the matter has been remanded and is back on appeal.

This is precisely what occurred here. In Saha Thai's opening Motion for Judgment on the Agency Record, it repeatedly refers to "the ITC's four sunset reviews" collectively. Pl.'s Mot. for J. on the Agency R. at 36, ECF No. 26 (Pl.'s Mot.); *id.* at 2 ("the ITC has repeatedly confirmed in sunset reviews"); *id.* at 39 ("the ITC's determination in the underlying investigation, and the following sunset reviews"). It was not a new argument. Saha Thai had done the same in its briefing before Commerce. *See, e.g.*, Saha Thai Steel's Comments on Scope Inquiry, J.A. at 1,930 (discussing the "determinations in the original investigation in 1985 and in *all subsequent sunset reviews*") (emphasis added); Saha Thai Steel's Scope Inquiry Case Brief, J.A. at 1,992–93 (stating in a bolded section heading that "ITC Sunset Reviews of The Very CWP from Thailand AD Order Confirm That All Line Pipe – Including Dual-Stencil Pipe – Is Excluded From The Scope Without Qualification"; stating separately in text that "[t]he ITC's explanation in the most recent sunset review (i.e., the fourth review) is unsurprising as it is *consistent with the previous sunset reviews*.") (emphasis added); Wheatland Tube's Rebuttal Brief, J.A. at 2,015 (referring to the first sunset review as "the 2000 sunset review" and citing to sections of Saha Thai's briefing before the agency that refer to all four sunset reviews). Neither the Government nor Wheatland Tube objected to Saha Thai's references to and reliance on all four sunset reviews. *See* Def.'s Resp. to Pl.'s Mot., ECF No. 37 (Def.'s Resp.); Def.-Int.'s Resp. in Opposition to Pl.'s Mot., ECF No. 34 (Wheatland Tube Resp.). Instead, they engaged with the argument on the merits and argued that the sunset

reviews supported their position.  Wheatland Tube Resp. at 16, ECF No. 34 ("The
records of the initial investigation and five-year sunset reviews before the
Commission further support Commerce's conclusion that standard pipe which is
dual-stenciled as line pipe is included within the scope of the order."); Def.'s Resp. at
20–23, ECF No. 37 (discussing in detail Saha Thai's arguments regarding the sunset
reviews and advancing opposing arguments, but not objecting to Saha Thai's
references to all the sunset reviews collectively).  Neither the Government nor
Wheatland Tube made any distinction about the applicability of the first and second
reviews as opposed to the third and fourth.[2]  *See* Def.'s Resp., ECF No. 37 (silent on
the issue); Wheatland Tube Resp., ECF No. 34 (same).

Saha Thai's arguments were fully briefed and debated before the Court,
including with oral argument,[3] when the Court issued its remand opinion in *Saha
Thai I*.  547 F. Supp. 3d 1278 (CIT 2021).  Like Vivint, Wheatland Tube had an
opportunity during the Court's initial review to raise the argument it now propounds

---

[2] Furthermore, Saha Thai specifically cites to a prehearing brief filed by Wheatland Tube in the *First Sunset Review* proceedings, yet another connection with and reference to the *First Sunset Review*.  Pl.'s Mot. at 18–19, ECF No. 26 ("Petitioner Wheatland Tube itself in a subsequent sunset review of the AD order . . . .").  All agree that the brief is part of the record, but Saha Thai's references to it also indicate the importance of the *First Sunset Review*.  When responding to Saha Thai's characterization of Wheatland Tube's brief in the *First Sunset Review*, neither Wheatland Tube nor Commerce objected. Wheatland Tube Resp. at 19–20, ECF No. 34; Def.'s Resp. at 23, ECF No. 37.  Instead, both Commerce and Wheatland Tube simply respond to Saha Thai's arguments and advance opposing points.  *Id.*
[3] At the first oral argument, the Court repeatedly discussed language from the *First Sunset Review*, *Second Sunset Review*, and *Presidential Proclamation 7274*.  Neither Wheatland Tube nor Commerce objected to those materials as constituting extra-record evidence.  *See* First Tr. 34:2–4 (mentioning that "in that first sunset review . . . the International Trade Commission discussed the different products" and then going on to cite specific page numbers in the *First Sunset Review*); *id.* at 34:22–23 ("Fast-forward to the second review, which took place and was issued in July of 2006"); *id.* at 34:17–18 ("President Clinton's proclamation").

— that the *First* and *Second Sunset Reviews* are not on the record. Despite Saha Thai's referring repeatedly to all "four sunset reviews," Wheatland Tube made no such objection. *See* Wheatland Tube Resp., ECF No. 34. As with Vivint, "[o]nce its first appeal was decided, all matters which could have been raised then—but were not—[a]re foreclosed." 856 F. App'x at 304. The case is now before the CIT after a remand decision, and Wheatland Tube's challenge to the record is forfeited because of its failure to raise the challenge during the Court's first consideration of this case.

## III.   Record Evidence

Even if Commerce and Wheatland Tube did not forfeit these objections, the first two *Sunset Reviews* and *Presidential Proclamation 7274* were fairly construed as part of the administrative record.

To dispense with *Presidential Proclamation 7274*: The Court must take judicial notice of it, and its inclusion in the record is therefore proper. 44 U.S.C. § 1507 ("The contents of the Federal Register *shall* be judicially noticed.") (emphasis added); *To Facilitate Positive Adjustment to Competition from Imports of Certain Circular Welded Carbon Quality Line Pipe*, 65 Fed. Reg. 9,193 (Feb. 23, 2000) (*Presidential Proclamation 7274*); *see also Borlem S.A.-Empreedimentos Industriais v. United States*, 913 F.2d 933, 940 (Fed. Cir. 1990) ("The short answer . . . is that [the document] is on the record, having been published in the Federal Register."); *Mobility Workx, LLC v. Unified Patents, LLC*, 15 F.4th 1146, 1151 (Fed. Cir. 2021) (citing various authorities for the proposition that judicial notice of "government

documents . . . 'whose accuracy cannot reasonably be questioned'" is appropriate and granting a motion to take judicial notice of documents not on the agency record and consider constitutional challenges raised relating to them). *Presidential Proclamation 7274* is also cited and discussed in the *First* and *Second Sunset Reviews*. *First Sunset Review* at 30 n.186; *Second Sunset Review* at Overview-5 n.16. Although the first two *Sunset Reviews* are not published in the Federal Register, they are "government documents . . . 'whose accuracy cannot reasonably be questioned'" so that the Court may take judicial notice of them. *Compare* 44 U.S.C. § 1507 ("The contents of the Federal Register *shall* be judicially noticed."), *with Mobility Workx*, 15 F.4th at 1151 n.1 (noting that "this court *could* take judicial notice of the existence of a trademark") (emphasis added).

The first two *Sunset Reviews* and their discussion of *Presidential Proclamation 7274* are also included in the record because "the record is not limited to documents 'relied on or used' by the agency . . . the agency cannot ignore relevant information which is before it, and the reviewing court must be in a position to determine if it ha[s] done so." *Floral Trade Council v. United States*, 709 F. Supp. 229, 230 (CIT 1989). Contrary to Commerce's and Wheatland Tube's protestations, here "the dispute may be resolved by applying some common sense." *Id.* The Court need only ask "whether the decision can be reviewed properly without" the first two *Sunset Reviews. Id.* It cannot. Those two documents are so integral to Commerce's analysis that not only are they "sufficiently intertwined with the relevant inquiry," *id.*, but

also "[a]ll of the information in [them] was in front of Commerce during the investigation, regardless of whether or not Commerce chose to ignore it." *F. Lli De Cecco Di Filippo Fara San Martino S.P.A. v. United States*, 980 F. Supp. 485, 487 (CIT 1997).

Because the later reviews constantly reference the earlier reviews, their inclusion in the record is necessary for judicial review. Here, no party disputes that the *Third* and *Fourth Sunset Reviews* are part of even the most restrictive "four-corners" understanding of the administrative record. *See* Second Tr. 17:11–13 (The Court: "So everyone agrees that -- I assume, if anyone doesn't, please speak now -- that the third and fourth reviews are on the administrative record." No party objected, and counsel for Saha Thai and Wheatland Tube answered in the affirmative. *See id.* at 17:15, 54:13–14.). The *Third Review* cites the *First Review* forty-three times; the *Second Review* fifty times. *See Third Sunset Review.* The *Fourth Review* cites the *First Review* forty times; the *Second Review* forty-four times. *See Fourth Sunset Review.* In total, the latter two *Reviews* cite the former two *Reviews* an astounding one hundred seventy-seven times. Additionally, the specific portions of the *First Review* and the *Second Review* this Court cited in *Saha Thai I* are all cited by the *Third* and *Fourth Review. See Saha Thai I*, 547 F. Supp. 3d at 1285–87 (citing to portions of the *First Review* cited in footnotes 49 and 77 of the *Third Review*,

portions of the *Second Review* cited to in footnote 81 of the *Third Review* and footnote 54 of the *Fourth Review*).[4]

The Court here is on solid ground to consider such pervasively referenced documents from prior investigations of the same order as part of the administrative record. *See Floral Trade Council*, 709 F. Supp. at 230–31; *see also, e.g.*, *Zhejiang Native Produce & Animal By-Prods. Imp. & Exp. Corp. v. United States*, 27 C.I.T. 1827, 1854 n.40 (2003) (citing *Floral Trade Council* for the proposition that a document that "was before Commerce" during an investigation "may fairly be considered part of the record," especially when the "the issue was argued before this court in the parties' briefs"); *China Steel Corp. v. United States*, 264 F. Supp. 2d 1339, 1352 n.11 (CIT 2003) (permitting Commerce's use of evidence a party decried as not in the record and noting three compelling reasons:  (1) the disputed document was in front of Commerce during the investigation, (2) it was cited by a document Commerce created during the investigation, and (3) the disputed document was in the public record); *AG der Dillinger Huttenwerke v. United States*, 193 F. Supp. 2d 1339, 1350 (CIT 2002) (declaring a document from a prior sunset review part of the record, despite Commerce having rejected its submission as untimely); *Intrepid v. Int'l Trade Admin.*, 787 F. Supp. 227, 229 (CIT 1992) (applying the same "sufficiently intertwined" standard to Commerce's concurrent reviews of AD and CVD scopes).

---

[4] The Court additionally notes that the *Third Review* cites the entirety of the *Second Review* twice, in footnotes 12 and 31.  Although the *Second Review's* Overview is not directly cited, it is obviously included in the *Third Review's* citation of the entire *Second Review*.

Separate from the frequent references that the *Third* and *Fourth Sunset Reviews* make to the *First* and *Second Reviews*, Saha Thai referred to them repeatedly in its briefing to Commerce. *See, e.g.*, *AG der Dillinger Huttenwerke*, 193 F. Supp. 2d at 1350 (finding that a document was part of the record where "the issue [it presented] was raised with sufficient clarity to put Commerce reasonably on notice in a timely manner"). For example, Saha Thai wrote that "based on the Commission's determinations in the original investigation in 1985 and in *all subsequent sunset reviews*, it is clear that the Commission's position is that line pipe and dual stenciled pipe are not included within the scope of the Order." J.A. at 1,930 (emphasis added). All the parties discuss and quote language from a brief that Wheatland Tube filed in the *First Sunset Review* proceeding, demonstrating a familiarity with that proceeding. *See* J.A. at 1,913–14, 1,920, 2,015. The relevance of the first two *Sunset Reviews* to the scope inquiry hardly comes as a surprise. Moreover, those reviews specifically analyze the language and scope of the antidumping orders: The *First Sunset Review* discusses "the express exclusion of line and dual-stenciled pipe from relevant antidumping orders," and the *Second Sunset Review* likewise analyzes those distinctions. *Saha Thai I*, 547 F. Supp. 3d at 1285–86 (citing *First Sunset Review* at 13 n.53; *Second Sunset Review* at 11 n.55). Because Saha Thai repeatedly referenced all four sunset reviews and because the reviews themselves cross-reference each other nearly two hundred times, all four *Reviews* are "sufficiently intertwined with the relevant inquiry" so that "the decision can[not] be reviewed [properly] without" them.

*Floral Trade Council*, 709 F. Supp. at 230.  They are fairly included in the record, and Commerce may not choose to ignore them.[5]   *Id.*

In fact, because "Commerce chose to ignore" them, *F. Lli De Cecco*, 980 F. Supp. at 487, it was in dereliction of its duty to review all of the materials listed under 19 C.F.R. § 351.225(k)(1) (June 17, 2020).[6]  Counsel for Saha Thai and Wheatland Tube agree that sunset reviews are (k)(1) materials, meaning Commerce was obligated, by regulation, to review them.  *See* Second Tr. 14:21–23, 59:20–25; *Quiedan Co. v. United States*, 294 F. Supp. 3d 1345 (CIT 2018) (including sunset reviews among the (k)(1) materials), *aff'd*, 927 F.3d 1328 (Fed. Cir. 2019).  The argument Wheatland Tube is forced to advance here is that the same documents Commerce is required by regulation to have considered in making its determination cannot be referenced by the Court in deciding if substantial evidence supports Commerce's determination.[7]

Saha Thai cited all four sunset reviews to Commerce.  Commerce chose to rely only on the final two reviews.  However, those two reviews pervasively cite the *First*

---

[5] This is a position with which Commerce may now appear to agree, given its statement at the most recent oral argument that "Commerce had reconsidered the issue and reconsidered these documents. They are all on the record."  Second Tr. 74:19–20.

[6] 19 C.F.R. § 351.225(k)(1)(i) currently says that certain sources "may be taken into account" by the Secretary.  At the time of the agency's scope determination, however, the applicable regulation said the sources "*will* be taken into account."  *See* 19 C.F.R. § 351.225(k)(1)(i) (June 17, 2020) (emphasis added); *Saha Thai I*, 547 F. Supp. 3d at 1289–91.

[7] Commerce appears to disagree with Wheatland Tube and agree with the Court on this issue, as it states in the Final Scope Ruling.  *See* J.A. at 2,046, ECF No. 42 ("Importantly, the Court of International Trade (CIT) has stated that 'when a respondent cites (k)(1) sources as supporting a product's exclusion from the scope of an order, the court cannot consider the language of a scope order in isolation, but *must consider those sources*.'") (emphasis added).  Commerce further quoted the CIT, noting that "[w]hether the order is ambiguous or not, Commerce's regulations are unambiguous–it '*will* take into account' the (k)(1) criteria in conducting a scope determination.  No case has invalidated this regulatory requirement."  *Id.*  (alteration and emphasis in original).

and *Second Review* as well as *Presidential Proclamation 7274*. Commerce cannot
choose to ignore information that is (1) cited to it, (2) part of the (k)(1) materials, and
(3) "sufficiently intertwined with the relevant inquiry." *See Floral Trade Council*,
709 F. Supp. at 230–31 (holding documents from earlier investigations that become
"sufficiently connected to the current investigation [are] to be considered to be before
the agency for purposes of the decision at issue"); *accord Zhejiang Native Produce*, 27
C.I.T. at 1854 n.40. *Cf.* 19 C.F.R. § 351.104(a) ("The Secretary will maintain an
official record of each antidumping and countervailing duty proceeding. The
Secretary will include in the official record all factual information, written argument,
or other material developed by, presented to, *or obtained by the Secretary* during the
course of a proceeding that pertains to the proceeding.") (emphasis added).
Commerce therefore properly considered these documents in its remand
redetermination.

## IV.    ITC Statements

Commerce and Wheatland Tube finally dispute the Court's characterization of
the ITC's final determination in the original investigation, as well as the Court's
characterization of the ITC's statements in the *Third* and *Fourth Sunset Reviews*.
Def.-Int.'s Comments at 5, ECF No. 62; Remand Results at 18–20. But their
arguments are based on one central conceit: that the ITC does not understand the
scope of the orders it reviews. The ITC has spoken with one consistent voice,
repeatedly emphasizing that dual-stenciled line pipe is not within the scope of the

Thailand Order.  The primary problem in this case is not a tricky comparison between the product characteristics of standard and dual or mono-stenciled line pipe;[8] rather, the primary problem presented by this case is that Commerce wishes to blind itself to the ITC's repeated pronouncements.  Because the Court must "hold unlawful any determination, finding, or conclusion . . . unsupported by substantial evidence on the record," 19 U.S.C. § 1516a(b)(1)(B)(i), and because that includes evidence that "fairly detracts" from Commerce's conclusions, the Court cannot allow Commerce to do so. *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1379 (Fed. Cir. 2003).

A reference to the language in the *First* and *Second Sunset Reviews* demonstrates why Wheatland Tube and Commerce are fighting so vigorously to keep those statements out of the record.   In those reviews, the ITC consistently identifies dual-stenciled pipe as line pipe, not standard pipe.  The *First Sunset Review* describes "dual-stenciled line pipe" as "pipe that meets both line pipe and CWP specifications but enters as line pipe for customs purposes."  *See Certain Pipe and Tube from*

---

[8] Wheatland Tube argues that whether or not line pipe was produced in Thailand when the ITC issued its initial injury determination is immaterial because 19 U.S.C. § 1677j provides a separate avenue to cover dual-stenciled line pipe.  Def.-Int.'s Comments at 7, ECF No. 62.  But neither 19 U.S.C. § 1677j(c) nor § 1677j(d) change the analysis.  Commerce had the opportunity to investigate Saha Thai's products for minor alterations under § 1677j(c) and declined to do so.  *Saha Thai I*, 547 F. Supp. 3d at 1286–87.  Wheatland Tube did not appeal Commerce's denial of its petition to conduct a minor alteration analysis.   Section (d) is also inapplicable; dual-stenciled and line pipe are not "later-developed" merchandise.   Rather, line pipe was initially included in the original petition and was voluntarily withdrawn by petitioners after they determined that it was not being produced in Thailand at the time. *Letter Dated March 14, 1985, from Petitioner Regarding Partial Withdrawal of Petition*, J.A. at 1,781–82.   Wheatland Tube also did not argue before Commerce that dual-stenciled line pipe constituted later developed merchandise.  *See* Wheatland Tube's Scope Comments, J.A. at 1,002 (no discussion of line pipe as later developed merchandise); Wheatland Tube's Case Br., J.A. at 1,962 (same); Wheatland Tube's Rebuttal Br. at 10, J.A. at 2,036 (same).

*Argentina, Brazil, Canada, India, Korea, Mexico, Singapore, Taiwan, Thailand, Turkey, and Venezuela*, Inv. Nos. 701-TA-253, 731-TA-132, 252, 271, 273, 276, 277, 296, 409, 410, 532–534, 536, and 537 (*First Sunset Review*), USITC Pub. 3316 at 6 (July 2000); *see also Saha Thai I*, 547 F. Supp. 3d at 1285. The *First Sunset Review* explains that, when President Clinton imposed temporary safeguard duties on line pipe, dual-stenciled line pipe was included in the safeguard duties, *but standard pipe was not*. *First Sunset Review* at 28 ("In the case of Korea . . . until safeguard duties on line pipe went into effect on March 1, 2000, they enjoyed unlimited access to the U.S. CWP market by exporting dual-stenciled line pipe"); *see also Saha Thai I*, 547 F. Supp. 3d at 1297. The *Second Sunset Review* similarly stated that President Clinton's safeguard duties were imposed on "line pipe imports . . . including 'dual-stenciled' pipe." *See Certain Pipe and Tube from Argentina, Brazil, India, Korea, Mexico, Taiwan, Thailand, and Turkey*, Inv. Nos. 701-TA-253, 731-TA-132, 252, 271, 273, 409, 410, 532–534, and 536 (*Second Sunset Review*), USITC Pub. 3867 at 4–5 (July 2006) at Overview-5 n.16; *see also Saha Thai I*, 547 F. Supp. 3d at 1286, 1297 (elaborating that "dual-stenciled pipe *was* treated as falling under the safeguard duties imposed by President Clinton, even though the proclamation only mentions 'line pipe.'") (emphasis in original). If dual-stenciled line pipe were standard pipe, as Wheatland Tube claims, then it would not have been subject to President Clinton's safeguard tariffs, which solely applied to "line pipe." For Wheatland Tube to be right, one must find that the ITC and President Clinton were wrong.

It is the same story regarding the later sunset reviews.  Wheatland Tube and Commerce's original determination would have us believe that the ITC misspoke.  In collectively describing the scopes of all the orders at issue in the *Fourth Sunset Review*, the ITC found that "[d]ual-stenciled pipe, which enters as line pipe under a different subheading of the Harmonized Tariff Schedule of the United States ("HTS") for U.S. customs purposes, is not within the scope of the orders." *See Certain Circular Welded Pipe and Tube from Brazil, India, Korea, Mexico, Taiwan, Thailand, and Turkey (Final)*, Inv. Nos. 701-TA-253 and 731-TA-132, 252, 271, 273, 532-534, and 536 (*Fourth Sunset Review*), USITC Pub. 4754 (Jan. 2018) at 4.  Commerce and Wheatland Tube were left to argue that "the Commission's statement was not addressing the language of each individual order but rather providing a generalized statement 'applicable to the majority of the orders, which contained explicit exclusions for dual-stenciled pipe.'" *See* Def.-Int.'s Resp. at 18, ECF No. 34 (quoting Final Scope Ruling at 15; *see also Saha Thai I*, 547 F. Supp. 3d at 1294–95. Commerce and Wheatland Tube claim this despite the ITC's having made the very same statement in *the Third Sunset Review*: "[D]ual-stenciled pipe, which for U.S. customs purposes enters as line pipe under a different tariff subheading, is not within the scope of the orders." *Certain Circular Welded Pipe and Tube from Brazil, India, Korea, Mexico, Taiwan, Thailand, and Turkey*, Inv. Nos. 701-TA-253 and 731-TA-132, 252, 271, 273, 532-534 and 536 (*Third Sunset Review*) at 6, USITC Pub. 4333 (June 2012).

Whether one examines all four sunset reviews or only the *Third* and *Fourth*

*Reviews*, the ITC spoke with one consistent voice:  Dual-stenciled pipe is line pipe,

not standard pipe, and is not covered by the scope of any relevant order it reviewed

over nearly four decades.  Commerce and Wheatland Tube wish to say that the ITC

does not speak with specificity and does not know what it is talking about.  The record

reveals otherwise because the ITC's position never wavered from 1985 to the present.

Indeed, the only ITC statement equating line pipe, dual-stenciled or otherwise, with

standard pipe was the original 1986 *dissent*.  *See* ITC Final Determination, J.A. at

1,277–83 (dissenting Commissioner's views).  Just as Commerce may not use a scope

determination to rewrite the scope under review, it may also not use a scope

determination to rewrite the history of the ITC's underlying determinations.  The

Remand Results properly find that dual-stenciled line pipe is not covered within the

Thailand Order's scope.  The record before the agency — from Wheatland Tube's

decision to withdraw line pipe from consideration in the original investigation to the

most recent ITC sunset review — support that determination.

## CONCLUSION

Commerce and Wheatland Tube have tried to argue that the full record of this

proceeding should not be considered while the record in other proceedings is outcome

determinative.  Focusing on the record of the Thailand Order reveals that not to be

the case.  Commerce has returned a decision that adequately complies with the

Court's Remand Order, finding on reconsideration that dual-stenciled pipe is not

included in the scope of the Thailand Order.  The Court's rationale in the Remand

Order remain sound, and Commerce's Remand Results are supported by substantial

evidence on the record. Accordingly, it is hereby:

       **ORDERED** that the Remand Results are **SUSTAINED**.

       Judgment shall be entered accordingly.  A separate order will issue to reflect

that the contested documents are properly considered part of the administrative

record in this matter.

                       /s/     Stephen Alexander Vaden
                       Stephen Alexander Vaden, Judge

Dated:   August 25, 2022
        New York, New York